OPINION
{¶ 1} Defendant-appellant, Christopher Byrd, appeals his convictions in the Warren County Court of Common Pleas for one count of felonious assault with a gun specification, and two counts of having weapons while under disability. We affirm the convictions.
 {¶ 2} According to testimony offered at trial, on a Friday evening in June 2008, *Page 2 
Byrd assaulted the victim, Jennifer Shepherd, by choking her and holding her down on his bed while threatening her with a gun. Shepherd testified that on the day of the assault, she and Byrd ingested heroin at a trailer he shared with his mother and father in the River's Bluff Trailer Park.
 {¶ 3} Later that evening, two men approached Shepherd and demanded the return of a gun they accused her of stealing. When she explained that she did not have the gun, the three concluded that Byrd had it. The two men told Shepherd that she had to persuade Byrd to return the gun, or at least get him to exit his trailer so they could discuss the matter with him. When Shepherd could not convince Byrd to come outside, she entered his trailer and followed him into his bedroom. Once inside his bedroom, Shepherd told Byrd that the men were demanding the return of their gun. After accusing Shepherd of setting him up, Byrd removed the gun from his waistband and placed it to her head, at which time, Shepherd tried to defend herself. However, Shepherd testified that Byrd choked her, slammed her onto the bed, and continued to point the gun at her head while promising to kill her.
 {¶ 4} Responding to Shepherd's cries for help, Byrd's father came into the bedroom and pulled Byrd off of her. Both men left the bedroom and began to argue over contacting the police, with Byrd imploring his father not to call because his status as a felon would allow the police to arrest him for having a weapon under disability. Outside, the two men who were waiting for the return of their gun grew impatient and knocked the air conditioning unit out of Byrd's trailer. At that time, Byrd's father decided to call the police who responded within minutes.
 {¶ 5} Deputy Craig Crooks testified that he received a dispatch call announcing the armed assault. As the first to respond, and after confirming that Byrd matched the description of the assailant, Crooks ordered Byrd to the ground and placed him in *Page 3 
handcuffs. As Crooks was detaining Byrd, Deputy Ashlynn Phillips arrived on the scene to ascertain the location of the gun. Byrd's father and mother told Phillips that the gun was in a freezer in the trailer, where Phillips later retrieved it.
 {¶ 6} After securing the gun, Phillips took Shepherd's statement and testified that while she was talking to her, Shepherd appeared very shaken up, nervous, scared, and was sweating. In addition to Shepherd's traumatized demeanor, Phillips also observed red marks on her body, especially at the base of Shepherd's neck.
 {¶ 7} Byrd was indicted on one count of felonious assault with a gun specification, and two counts of having weapons under disability. Byrd waived his right to a jury, and instead, requested a bench trial. After the court heard testimony and evidence against him, it found Byrd guilty on all counts and sentenced him to a total aggregate prison sentence of seven years. It is from this decision that Byrd now appeals, raising the following assignment of error:
 {¶ 8} "TRIAL LEVEL COUNSEL SUBSTANTIALLY VIOLATED HIS ESSENTIAL DUTIES AND APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND PREJUDICED BY COUNSEL'S INEFFECTIVENESS."
 {¶ 9} In his sole assignment of error, Byrd asserts that his convictions must be reversed because he received ineffective assistance of counsel at trial. This argument lacks merit.
 {¶ 10} While the Sixth Amendment pronounces an accused's right to effective assistance of counsel, judicial scrutiny of an ineffective assistance claim must be "highly deferential" to avoid viewing counsel's actions in hindsight. Strickland v. Washington (1984), 466 U.S. 668,689, 104 S.Ct. 2052. Within Strickland, the Supreme Court established a two-part test that requires an appellant to demonstrate that first, "his trial counsel's performance was deficient; and second, that the deficient performance *Page 4 
prejudiced the defense to the point of depriving the appellant of a fair trial." State v. Myers, Fayette App. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing Strickland.
 {¶ 11} Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because the appellant must prove both prongs, a reviewing court need not address the deficiency issue if appellant was not sufficiently prejudiced by counsel's performance. Id. at 697.
 {¶ 12} Byrd claims that his counsel was ineffective for three reasons. First, Byrd asserts that his counsel's failure to request a review of Shepherd's prior statements constituted ineffective assistance. However, Byrd's counsel properly requested a Crim. R. 16(B)(1)(g) review of the witness' statements and was not deficient in his representation. While the record indicates that the trial court denied Byrd's motion for the review, the court, and not Byrd's counsel, was mistaken in its application of the rule.
 {¶ 13} According to Crim. R. 16(B)(1)(g), counsel has the right to request an in camera inspection of a witness' prior statements in order to determine if any inconsistencies exist. "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement." If the court determines that inconsistencies do exist, defense counsel is permitted to use the prior inconsistent statement against the witness during cross-examination. Id.
 {¶ 14} After the state examined Shepherd, Byrd's counsel began his cross-examination *Page 5 
and after approximately 25 questions, the following exchange occurred:
 {¶ 15} [Byrd's counsel] "Judge, you know at this point I'd like to make a motion as far as, you know, the Rule 16(B)(1)(g) for any prior consistent statements. I have not had a chance to see those.
 {¶ 16} [The Court] "It's supposed to be done at the conclusion of direct examination.
 {¶ 17} [Byrd's counsel] "Okay. No further questions, Your Honor."
 {¶ 18} Based on this exchange, the court denied the motion because Byrd's counsel did not move the court as soon as the state finished its direct examination of Shepherd. However, Ohio courts have found that a 16(B)(1)(g) motion is timely made so long as counsel moves the court after the direct examination but before the completion of that witness' cross-examination. State v. Schnipper (1986), 22 Ohio St. 3d 158, 160.
 {¶ 19} In reversing the decision of a trial court that denied a motion similar to the one made in the case at bar, the Fifth District Court of Appeals analyzed Crim. R. 16(B)(1)(g) and stated that the rule calls for counsel's motion upon completion of a witness' direct examination at trial. State v. Fields (Dec. 31, 1997), Delaware App. No. 95CAA-08-048. The court went on to state, "the trial court and appellee would engraft a `but before the commencement of cross-examination' requirement into the rule. The rule does not limit the time for making the motion to the period between the conclusion of direct examination and the commencement of cross-examination. The rule only requires that the motion be made after the witness' direct examination is completed." Id. at *6.
 {¶ 20} Here, Byrd's counsel correctly moved the court according to Crim. R. 16(B)(1)(g) before he completed his cross-examination of Shepherd so that his *Page 6 
assistance was not deficient and did not constitute a violation of Byrd's Sixth Amendment rights.
 {¶ 21} Although Byrd's ineffective assistance claim fails regarding Crim. R. 16(B)(1)(g), the court erroneously denied the motion so that we will apply a plain error analysis to determine if the rule's misapplication warrants reversal.[1]
 {¶ 22} According to Crim. R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless, but for the error, the outcome of the trial would have been different. State v.Waddell, 75 Ohio St.3d 163, 166, 1996-Ohio-100. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 50, quotingState v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 23} Here, plain error does not apply because even if the court had granted Byrd's motion and allowed any possible prior inconsistent statements to be used against Shepherd, the court had ample evidence before it to convict Byrd. Borrowing his argument specific to his ineffective assistance claim, Byrd contends that the prior statements may have revealed that Shepherd made statements to the police inconsistent to her testimony. Because of these statements, Byrd contends that Shepherd's credibility could have been attacked on cross-examination, which would have discredited her as the state's key witness.
 {¶ 24} Byrd further asserts that Shepherd's credibility was already limited due to her testimony that she was an active drug user until four weeks prior to the trial, that she *Page 7 
admitted to using heroin on the day of the assault, and that she used drugs while her three children were in close proximity to her. However, even absent any prior inconsistent statements, Shepherd admitted her drug use so that the trial court was well aware of these facts and was free to judge Shepherd's credibility based on her testimony and surrounding circumstances. During cross-examination, Byrd's counsel brought up her drug use, that her *Page 8 
children were near her while she took drugs, and that the children were exposed to the situation that evening. Shepherd neither denied any usage, nor did she change her testimony while Byrd's counsel thoroughly cross-examined her.
 {¶ 25} While Byrd claims that his entire case turned on Shepherd's credibility, the state offered other evidence of his guilt. Specifically, the court heard testimony from the two deputies who were dispatched to the scene, later detained Byrd, and found the gun hidden in Byrd's freezer. Both deputies testified to Byrd's knowledge and possession of the gun, and Deputy Phillips testified to seeing red marks at the base of Shepherd's neck.
 {¶ 26} We also note that after reviewing the deputies' testimony, we were unable to locate any inconsistencies in Shepherd's direct testimony and the accounts given by the deputies. Instead, the only point of contention among the witnesses seems to be how many times Shepherd appeared in Byrd's trailer after the assault. Byrd's mother testified on his behalf and claimed that Shepherd entered and exited the trailer two or three times within the moments following the assault, while Shepherd testified that once she was able to leave, she did not come back into the trailer. We fail to see what impact this discrepancy would have, as the assault had already occurred by that time. However, the court heard from both Shepherd and Byrd's mother and was able to come to a conclusion regarding the issue based on the credibility of both witnesses, even in the absence of possible prior inconsistent statements.
 {¶ 27} As further evidence of Byrd's guilt, Byrd's father testified that he ran to the bedroom because he heard Shepherd's cries for help, he saw his son holding Shepherd down on the bed, and that he was frightened by what Byrd was doing to Shepherd. Byrd's father further testified that he saw his son's hands on Shepherd and that he thought that his son was possibly choking her. Because of that belief, Byrd's father *Page 9 
pulled Byrd off of Shepherd and ushered him out of the room so that Shepherd could exit. The court also heard the testimony of Byrd's father and mother, who confirmed that Byrd hid the gun in the freezer.
 {¶ 28} Based on this evidence, as well its ability to determine the witnesses' credibility, the trial court had ample evidence before it to determine Byrd's guilt. Therefore, having found that the outcome of the trial would not have been different had the court granted Byrd's Crim. R. 16(B)(1)(g) motion, there was no plain error which warrants reversal.
 {¶ 29} Byrd next argues that his trial counsel was ineffective because of his failure to object to admittance of a piece of the state's evidence. However, it is well-settled in Ohio law that "debatable trial tactics do not establish ineffective assistance of counsel." State v.Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. "The failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." Id. at ¶ 103.
 {¶ 30} The court admitted, without objection from Byrd's counsel, the gun the state offered as that which Deputy Phillips removed from the freezer. After reviewing the record, we can neither say that Byrd's counsel was deficient in his failure to object to the admission, nor that such a failure was prejudicial to Byrd. While Byrd claimed that the gun presented in court was the not the same gun he had on the day in question and was not the one removed from the freezer, the court heard testimony from Phillips that the gun in court was the same one she seized from the freezer on the evening Byrd assaulted Shepherd. Phillips also testified to the chain of evidence, beginning with her removing the gun from Byrd's freezer to giving it to a different deputy who secured the gun in the police safe. Phillips also testified that the gun presented in court was the same one that had been tested to ensure that it had been in working order when Byrd *Page 10 
used it against Shepherd.
 {¶ 31} From this evidence, and based on the record, nothing indicates that the court would have sustained any objection that Byrd's counsel would have make, and even then, nothing indicates that Byrd would not have been convicted had his counsel objected to the gun being admitted.
 {¶ 32} Lastly, Byrd claims that he was denied effective assistance because his counsel failed to interview or subpoena witnesses. Again, we note that debatable trial tactics do not establish ineffective assistance of counsel. Conway, 2006-Ohio-2815. After reviewing the record, counsel's decision to not call additional witnesses falls squarely in his trail strategy. In total, Byrd called one witness and also took the stand in his own defense. The single witness offered, Byrd's own mother, was not particularly helpful to his cause. Instead, Byrd's mother verified that Shepherd was in her home and was with Byrd in his bedroom. During her testimony, Byrd's mother confirmed that she informed Deputy Phillips which freezer contained the gun, and further corroborated Shepherd's testimony regarding the two men and their desire to get their gun back.
 {¶ 33} Additionally, during his direct and cross-examination, Byrd admitted to pushing Shepherd down on his bed, that he possessed the gun, and that he did not want to call the police because he was a "convicted felon with a gun." In his own defense, Byrd contested Shepherd's testimony regarding her purpose for visiting his bedroom. Specifically, on direct examination, Byrd testified that Shepherd came to his bedroom and began touching him in a sexually-suggestive manner, exposing the gun located in his waistband. Byrd testified that Shepherd later pulled the gun from his waistband and that he grabbed it to get it away from Shepherd. In his attempt to secure the gun, Byrd testified that he pushed Shepherd and held her down on the bed.
 {¶ 34} Neither Byrd nor Shepherd testified that there was another person in the *Page 11 
room while the assault occurred so that Byrd's counsel would not have been able to call any witnesses who could have contradicted what either Shepherd or Byrd said happened during the assault. Instead, Byrd's counsel may have determined that no other witnesses would be beneficial to Byrd's defense, and we will not now question counsel's strategy to not call additional witnesses.
 {¶ 35} Additionally, we note that Byrd failed to specify what witnesses he wanted his counsel to call, what they might have offered, or how such witnesses could have aided in his defense. Therefore, we are unable to see how Byrd suffered the requisite prejudice.
 {¶ 36} Having found that he did not receive ineffective assistance of counsel throughout his trial, Byrd's assignment of error is overruled.
 {¶ 37} Judgment affirmed.
BRESSLER, P.J., and RINGLAND, J., concur.
[1] Byrd does not argue that the trial court erred in denying the Crim. R. 16(B)(1)(g) motion on appeal. Instead he limits his argument to ineffective assistance of counsel. Therefore, we sua sponte recognize the trial court's error and engage in the following plain error analysis. *Page 1