[Cite as *State v. Rodriguez*, 2016-Ohio-452.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                  :

    Plaintiff-Appellee,                       :                    CASE NO. CA2015-02-024

                                                 :                    O P I N I O N
- vs -                                                                        2/8/2016

                                                 :

JOSUE RODRIGUEZ, JR.,                   :

    Defendant-Appellant.                  :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-11-1755


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. Kasten, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Repper, Pagan, & Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Josue Rodriguez, appeals his convictions and sentence in the Butler County Court of Common Pleas for trafficking and possessing marijuana.

{¶ 2} Narcotics agents from the Drug Enforcement Agency began to suspect that Rodriguez was involved in drug trafficking. The agents started to surveil Rodriguez and his brother, and focused on Rodriguez's activity in the vicinity of his mother's apartment building.

Agents watched the apartment building in which Rodriguez's mother resided and often observed Rodriguez enter the apartment building with a key. Rodriguez exhibited signs of drug trafficking, such as leaving the apartment, driving to nearby locations only to have known drug offenders enter his car for a brief time sufficient to conduct transactions.

{¶ 3} After months of investigating Rodriguez, agents were performing surveillance at the apartment building when they observed Rodriguez arrive in the parking lot. Rodriguez removed a large duffle bag from the vehicle he was in, and carried the duffle bag inside. After approximately an hour, Rodriguez exited the apartment building without the bag. Later, Rodriguez returned to the apartment accompanied by a known associate, who arrived in a separate car. The two entered the apartment building, and Rodriguez's associate exited a few minutes later carrying a backpack, different than the duffle bag Rodriguez had earlier taken into the apartment. Several agents maintained surveillance on Rodriguez's associate, while other agents continued to surveil Rodriguez's location.

{¶ 4} Agents conducted a stop on Rodriguez's associate and located five pounds of marijuana in the backpack he carried from the apartment building. At that point, agents began preparing a search warrant for the apartment belonging to Rodriguez's mother while the other agents continued to surveil the apartment building. Agents observed Rodriguez leave the apartment. Shortly thereafter, an agent followed a mail carrier into the apartment building's door and waited beneath a staircase inside the apartment building. Upon Rodriguez's re-entering the apartment building, Rodriguez looked down the stairs and saw the agent. When Rodriguez backed away from the agent and started to leave, the agent told Rodriguez that he was under arrest. The agent removed items from Rodriguez's person when securing his arrest, one of which was a key to the apartment.

{¶ 5} During the arrest and initial exchange in the hallway, Rodriguez was loud and caused a commotion, leading the agent to believe that Rodriguez was trying to warn

someone inside the apartment that law enforcement was present. Upon receiving backup, the agents repetitively knocked on the door to the apartment; but no one responded. The agent then used the key found moments earlier to open the door in order to announce his presence and determine if anyone was present. An agent yelled inside, and Rodriguez's mother appeared. The agents then received consent from Rodriguez's mother to perform a protective sweep of the apartment to ensure that no one was present. During the sweep, agents observed marijuana under a bed. Later, during execution of a search warrant, agents also found marijuana in five-gallon buckets in the laundry room of the apartment.

{¶ 6} Rodriguez was charged with trafficking and possession of marijuana. Subsequently, Rodriguez filed a motion to suppress the marijuana, which was denied by the trial court. The matter proceeded to a jury trial, after which the jury found Rodriguez guilty of trafficking the marijuana found in the backpack during the stop of Rodriguez's associate, but not guilty of trafficking the marijuana found in his mother's apartment under the bed and in the laundry room. The jury also found Rodriguez guilty of possessing all the marijuana found; that is, the marijuana found in the backpack as well as the marijuana found in his mother's apartment.

{¶ 7} The trial court sentenced Rodriguez to one year for the trafficking conviction and three years for the possession conviction, to be served concurrently. The trial court also imposed fines for both convictions, incorrectly indicating on the judgment entry of sentence that the fine for trafficking was mandatory. The trial court also mislabeled the possession conviction as a fifth-degree felony, rather than a third-degree felony. After the court pronounced sentence and filed its entry, Rodriguez filed a notice of appeal. The trial court subsequently issued a nunc pro tunc entry correcting the degree of the felony, as well as its mistake indicating that one of the fines was mandatory.

{¶ 8} Rodriguez now appeals his convictions and sentence, raising the following

assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

{¶ 11} Rodriguez argues in his first assignment of error that the trial court erred in denying his motion to suppress for multiple reasons.[1] However, given our finding that Rodriguez lacked standing to challenge the seizure of marijuana from his mother's apartment, we find that the trial court did not err in denying Rodriguez's motion.

{¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 13} Fourth Amendment privacy rights are "personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421 (1978). As such, a person who alleges error by the use of evidence taken from someone else's property cannot claim that his own rights have been violated. *State v. Coleman*, 45 Ohio St.3d 298, 306 (1989). Only those whose personal rights have been violated can raise Fourth Amendment claims. *Id.* Thus, in order to challenge a search or

---

1. Rodriguez only challenges the seizure of the marijuana from his mother's home, but does not raise any challenges to the marijuana found in the backpack seized from his associate's car.

seizure on Fourth Amendment grounds, a defendant must possess a legitimate expectation of privacy in the area searched, and the burden is upon the defendant to prove facts sufficient to establish such expectation. *State v. Renner*, 12th Dist. Clinton No. CA2002-08-033, 2003-Ohio-6550.

{¶ 14} In limited circumstances, a person may have an expectation of privacy in the house of someone else, such as an overnight guest in the residence. *Minnesota v. Carter*, 525 U.S. 83, 89, 119 S.Ct. 469 (1998). However, "one who is merely present with the consent of the householder may not" claim a reasonable expectation of privacy in the home of another. *Id.* at 90.

{¶ 15} The record clearly demonstrates that Rodriguez did not have standing to challenge the seizure of marijuana because he did not have a reasonable expectation of privacy in his mother's apartment.[2] The record indicates that the only registered tenant in the apartment was Rodriguez's mother, and that Rodriguez was merely present with his mother's consent rather than living there or staying overnight. The fact that agents performed a protective sweep of the apartment belonging to Rodriguez's mother did not implicate Rodriguez's personal rights in any way, and thus, he cannot raise a challenge to the seizure of the marijuana found in the apartment.

---

2. Rodriguez also argues that the agent trespassed by entering through the locked door with the mail carrier into the common hallway area of the apartment building. Rodriguez cites *United States v. Jones*, __ U.S. __, 132 S.Ct. 945 (2012), for the proposition that the Fourth Amendment is violated where law enforcement trespasses on a person, house, paper, or effect. The Supreme Court noted specifically that the Fourth Amendment is implicated when the Government engages in a "physical intrusion of a constitutionally protected area." *Florida v. Jardines*, __ U.S. __, 133 S.Ct. 1409, 1414 (2013). Here, however, the common hallway was not a constitutionally protected area. There is no indication that the agent trespassed when he merely entered with the mail carrier and waited in the common area of the building beneath the staircase. *See United States v. Ellis*, N.D.Cal. No. 13-CR-00818 PJH, 2015 WL 4913233, *15 (Aug. 17, 2015) ("a locked outside door does not establish the same sanctity for a common hallway as is established for the individual apartment"); *United States v. Holland*, 755 F.2d 253, 255 (2d Cir.1985) ("common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors").

{¶ 16} Although Rodriguez argues that his possession of a key to the apartment demonstrates he had privacy expectations in the apartment, possessing a key, in and of itself, does not establish a reasonable expectation of privacy in the apartment. *State v. Joiner*, 8th Dist. Cuyahoga No. 81394, 2003-Ohio-3324. *See also State v. Logel*, 2d Dist. Montgomery No. 21912, 2008-Ohio-17, ¶ 28 ("although the defendant had a key to the apartment, he demonstrated no other indicia that would suggest he had a reasonable expectation of privacy in the apartment"); and *State v. Robinson*, 8th Dist. Cuyahoga No. 77981, 2001 WL 792696, *3 (July 12, 2001) (possession of keys to a vehicle was insufficient to demonstrate a reasonable expectation of privacy therein).

{¶ 17} The record indicates that agents would see Rodriguez enter the apartment building and leave a short time thereafter. However, there is no indication that Rodriguez remained in the apartment overnight to establish any expectation of privacy. There is no assumed expectation of privacy simply because of the familial relationship. *See State v. Hancock*, 2d Dist. Montgomery No. 24981, 2012-Ohio-5535, ¶ 9 (son had no privacy interest in his mother's home and lacked standing where he did not live at his mother's home and did not have permission to be there).

{¶ 18} Instead, courts analyze other factors to determine if family members have an expectation of privacy in homes belonging to relatives. *See Akron v. Callaway*, 162 Ohio App.3d 781, 788, 2005-Ohio-4095 (9th Dist.). In *Callaway*, the court determined that a son had a reasonable expectation of privacy in his father's home, despite his not living or being an overnight guest there, based on the long periods of time the son spent at the home taking care of his father and brother who suffered from mental and physical conditions. The court also considered that the son "was not at the home to pursue some sort of business venture or for his own use; rather, he was there because he played an integral role in [his father's] well-being and survival." *Id.* at ¶ 16. Unlike *Callaway*, the record indicates that Rodriguez

went to his mother's apartment for short periods of time, and while there, pursued a personal business venture by temporarily storing drugs there.

{¶ 19} After reviewing the record, we find that Rodriguez lacked standing to challenge the seizure of marijuana from his mother's home. As such, the trial court correctly denied Rodriguez's motion to suppress, and his first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ERRED IN FAILING TO MERGE THE TRAFFICKING AND POSSESSION CONVICTIONS.

{¶ 22} Rodriguez argues in his second assignment of error that his convictions for trafficking and possession should have been merged.

{¶ 23} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). If any of the following occurs, the defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance--in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23.

{¶ 24} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C.

2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 25} Rodriguez was convicted of trafficking marijuana in violation of R.C. 2925.03(A)(2), which forbids a person to, "Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows * * * that the controlled substance * * * is intended for sale or resale by the offender or another person." Rodriguez was also convicted of possessing marijuana in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶ 26} After reviewing the limited record before us, we find that Rodriguez has failed to establish his convictions are allied offenses. The record contains a transcript of the motion to suppress hearing, at which the trial court considered motions filed by Rodriguez, his mother, and his associate—all of whom were charged in connection with the marijuana seized from the car and apartment. However, there is limited information at the hearing specific to Rodriguez. We are further unaware if any evidence from the suppression hearing was introduced at trial because Rodriguez provided only a small excerpt of the transcript from his jury trial for our review.

{¶ 27} The jury trial excerpt provided to this court was specific only to testimony given by the agent who performed the protective sweep of the apartment belonging to Rodriguez's mother. This court also has a transcript of the sentencing hearing, as well as the bill of particulars detailing the charges against Rodriguez. However, upon our de novo review, we do not find that Rodriguez's convictions are allied offenses.[3]

---

3. During the sentencing hearing, the parties make reference to a discussion between counsel for Rodriguez, the prosecutor, and the trial court in the trial court's chambers specific to the allied offenses issue. The parties did not have the discussion transcribed or supplement the record with the particulars of the discussion. The only

**{¶ 28}** The limited information we have for review indicates that Rodriguez was found guilty of possessing all of the marijuana found in his mother's apartment and the amount found in the backpack from the car of Rodriguez's known associate. However, Rodriguez was found guilty of trafficking only that amount found in the backpack of his associate. By virtue of the jury's verdict, it must have believed that Rodriguez possessed all of the marijuana initially, but subsequently and separately prepared for shipment, shipped, transported, or delivered the marijuana found in the backpack thereby committing the trafficking offense. While it is possible to possess marijuana with the same animus and conduct necessary to traffic it, once initially possessed, a separate animus (distinct in time, supported by different conduct) can take place with the additional offense being "committed separately." *Ruff*, 2015-Ohio-995 at ¶ 25. We find nothing in the record before us to establish that Rodriquez possessed the marijuana and trafficked a portion of it with only one animus or motivation, or that his offenses did not occur separately.[4]

**{¶ 29}** The record demonstrates that Rodriguez possessed all the marijuana in his mother's apartment. Rodriguez could have possessed the marijuana for his personal use. The fact that he subsequently trafficked a portion of the marijuana he previously possessed does not, alone, demonstrate that he acted with the same animus or conduct for the full amount for which he was convicted of possessing. Clearly, if the jury believed both offenses were committed at the same time, with one animus or motivation, it would not have

mention was that during the meeting, the trial court informed the parties of its determination that the convictions were not allied offenses, and that the trial court decided to run the sentences for the convictions concurrently.

4. Rather than offer evidentiary support or point to information in the record to support his assertion, Rodriguez bases his merger argument on a case from the Ohio Supreme Court in which it found that possession and trafficking were allied offenses. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625. However, the court made its decision prior to *Ruff*, and its predecessor case, *State v. Johnson*, 128 Ohio St.3d 153 (2010), in which the court recognized that the allied offense test was fact-specific and could produce inconsistent results even when fact patterns appear similar.

specifically found the trafficking charge involved a lesser amount of marijuana that the amount involved in the possession charge.

{¶ 30} Despite Rodriguez's argument that possession must always merge with trafficking, we, as well as other courts, have found that possession and trafficking are not always allied offenses when the offenses are committed separately or where a different animus or motivation is apparent.

{¶ 31} This court previously considered whether trafficking and possession charges should have merged, and determined that the two charges were not allied offenses under the circumstances presented therein. *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312. Montoya sold heroin on multiple occasions to undercover officers. During each buy, Montoya and his associate would reach into a large bag containing balloons filled with different amounts of heroin. After each transaction, Montoya had balloons remaining in his bag, as he did not sell all that he possessed. When determining that the possession charge did not merge with trafficking, this court reasoned, "on each occasion, appellant and co-defendant only sold two or three balloons to the undercover officers. On all three dates, appellant and co-defendant still possessed the remainder of the balloons, constituting a separate act with a different animus."[5] *Id.* at ¶ 64.

{¶ 32} The Fifth District Court of Appeals recently determined that trafficking and possession convictions were not allied offenses. *State v. Bennett*, 5th Dist. Ashland No. 14-COA-029, 2015-Ohio-3560. Therein, police suspected Bennett of drug activity after they observed people with a known history of drug use coming and going from Bennett's house for short periods of time. Execution of a search warrant resulted in police locating baggies, pipes, digital scales, rolling papers, and various baggies of marijuana, and Bennett was

---

5. While Montoya was convicted of trafficking in violation of R.C. 2925.03(A)(1) rather than R.C. 2925.03(A)(2), the same reasoning is applicable.

charged with possession and trafficking marijuana. Upon sentencing, the court determined that Bennett had a separate animus for his two crimes because the "'managerial' necessities of marijuana dealing" called for "storing the product versus the actual selling thereof." *Id.* at ¶ 19. The court also considered that the amount Bennett trafficked was different from the amount he possessed, and that after his crime of trafficking was completed by selling to the various people who frequented his home, he still possessed nearly 2.7 pounds of marijuana. Thus, the court determined that the trafficking and possession charges were not allied offenses.

**{¶ 33}** The Fifth District also determined that where possession is a separate occurrence from trafficking, the two convictions cannot merge. *State v. Williams*, 5th Dist. Licking No. 2012-CA-34, 2012-Ohio-4708. In *Williams*, the appellant was charged with trafficking and possession after he sold a confidential informant five doses of heroin from a bag containing 32 doses. The court determined that Williams possessed and trafficked the heroin separately because,

> Williams actually "possessed" 32 unit doses of heroin from which he "sold" five of those unit doses to the undercover informant. Williams knew in advance that the confidential informant requested only five unit doses of heroin, yet he had an additional 28 unit doses in his possession.
>
> This is not a case where the trafficking and possession counts arouse [sic] from delivery of the same amount of drugs that was possessed by Williams. After Williams sold the five unit doses to the undercover informant, he walked away. At that point, he continued to possess an additional 28 unit doses of heroin.

*Id.* at ¶ 22-23.

**{¶ 34}** After reviewing the record, we find that Rodriguez has failed to demonstrate the record establishes that he acted with the same animus and conduct when he initially possessed the marijuana and subsequently trafficked the marijuana. Again, Rodriguez's conviction for trafficking was only for the amount seized in the backpack from his associate's

car, but did not include the large quantity found under the bed and in the laundry room of his mother's apartment.[6] There is simply no indication in the appellate record that the marijuana for which Rodriguez was convicted of possessing, was always possessed solely for the purposes of trafficking. As such, the trial court did not err in sentencing Rodriguez separately for his crimes. Rodriguez's second assignment of error is therefore, overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} THE TRIAL COURT ERRED WHEN ITS SENTENCING PRONOUNCEMENT DIFFERED FROM INITIAL JUDGMENT ENTRY.

{¶ 37} Rodriguez argues in his third assignment of error that the trial court erred by issuing the nunc pro tunc entry that changed his sentence without pronouncing the new sentence in open court with Rodriguez in attendance.

{¶ 38} As previously stated, the trial court issued a nunc pro tunc entry during the pendency of this appeal correcting the felony designation of Rodriguez's possession charge and also correcting the fine imposed on the trafficking charge to indicate that it was not mandatory. Rodriguez argues that these corrections changed the substance of his sentence so that he was entitled to appear for resentencing according to Crim.R. 43(A)(1). While Rodriguez's assignment of error is specific to his not being re-sentenced in person, we need not reach the merits of his argument because we sua sponte recognize that the trial court's sentencing contained other errors that must be addressed on remand.

{¶ 39} It is within this court's discretion to sua sponte consider whether the trial court committed specific instances of plain error. *State v. Byrd*, Warren App. No. CA2008-10-124, 2009-Ohio-1722, ¶ 21. According to Crim.R. 52(B), plain error exists where there is an

---

6. The jury evidentially heard testimony, not available to us upon review, which resulted in the jury reducing the amount involved in the trafficking charge so that it was committed separately from the possession charge.

obvious deviation from a legal rule affecting the outcome of the proceeding. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68.

{¶ 40} After reviewing the record, we have found a sentencing error that should be corrected through a partial, in-person, resentencing of Rodriguez. A partial resentencing to correct this deficiency discussed below will allow the trial court to specifically address Rodriguez regarding his postrelease control. Additionally, the partial resentencing will allow the trial court to address issues involving court costs, as well as correct clerical errors contained in its original sentencing entry.[7]

{¶ 41} Specifically, the trial court introduced the concept of postrelease control during the sentencing hearing, but did not indicate the length of postrelease control that may be imposed upon Rodriguez. *See State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18 (a trial court must inform the defendant at sentencing of the details of his postrelease control and the consequences of a violation of postrelease control); and *State v. Perry*, 12th Dist. Butler Nos. CA2011-01-008, CA2011-02-017, 2011-Ohio-3637 (failure to notify the defendant of the length of the postrelease control that could be imposed renders that portion of the sentence void).

{¶ 42} Nor did the trial court make any mention of the imposition of court costs. While a failure of the trial court to notify a defendant of court costs does not render any part of the sentence void, such failure does constitute reversible error. *State v. Graham*, 12th Dist. Warren No. CA2014-04-062, 2015-Ohio-576, ¶ 15. As such, a partial resentencing hearing will permit the trial court to address pertinent court cost issues previously omitted during the original sentencing hearing.

---

7. For example, the resentencing will also allow the court to list the correct statute under which Rodriguez was convicted, R.C. 2925.03(A)(2), rather than R.C. 2925.03(A)(1). Such clerical mistakes can be corrected without impacting Rodriguez's sentence.

{¶ 43} The incorrect portions of the trial court's sentence addressed above are therefore reversed and remanded for correction, and the trial court is directed to correct the omissions and clerical errors discussed herein as well as those raised sua sponte.

{¶ 44} Judgment affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

M. POWELL, P.J., and HENDRICKSON, J., concur.