[Cite as *State v. Daboni*, 2018-Ohio-4155.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case Nos. 18CA3 |
| Plaintiff-Appellee, | : | 18CA4 |
| | : | 18CA5 |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| JACQUES GOERGES K. | : | ENTRY |
| DABONI, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 10/05/18** |

_____
APPEARANCES:

Timothy Young, Ohio State Public Defender, and Katherine R. Ross-Kinzie, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Jacques Goerges K. Daboni, Toledo, Ohio, Appellant, Pro Se.

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Jacques Goerges K. Daboni appeals from the trial court's decision sentencing him to maximum and consecutive prison terms totaling thirty-two years after a jury found him guilty of six counts of trafficking in heroin in violation of R.C. 2925.03(A)(1) (which included five fifth-degree felony counts and one second-degree felony count), one count of trafficking in heroin in violation of R.C. 2925.03(A)(2), a second-degree felony, one

count of possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(a), a second-degree felony, and two counts of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), constituting one second-degree felony and one first-degree felony.  On appeal, Appellant contends, through counsel, that 1) the trial court erred in failing to merge, for purposes of sentencing, offenses that had a similar import, arose from the same conduct, and were not committed separately or with a separate animus; 2) the verdicts on the counts of engaging in a pattern of corrupt activity were not supported by sufficient evidence; 3) his right to a fair trial and due process of law was violated; and 4) the imposition of maximum possible sentences on all counts is not clearly and convincingly supported by the record.  Appellant also raises four additional pro se assignments of error, identified as pro se assignments of error five through eight, contending that 5) his trial counsel was ineffective for either waiving or failing to finish the suppression hearing; 6) his Fourth Amendment rights were violated when officers searched a residence located at 303 5th Street, Racine, Ohio, without probable cause for Appellant's arrest and without a search warrant or consent to search; 7) the trial court erred and abused its discretion by failing to ensure Appellant had a full suppression hearing and that his constitutional rights were protected; and 8) he is actually innocent.

{¶2} After review, we find no merit to any of the pro se assignments of error raised by Appellant. Thus, they are all overruled. Further, with respect to the arguments raised by appellate counsel, because we find the trial court erred in failing to merge count four in case no. 14CR173, possession of heroin, with the already merged trafficking in heroin counts, identified as count three in case no. 14CR173 and count five in case no. 14CR232, Appellant's first assignment of error is sustained. Accordingly, we reverse the trial court's imposition of sentence on the second-degree possession of heroin count in case no. 14CR173 and remand this matter to the trial court with instructions as set forth below. Because we find Appellant's engaging in a pattern of corrupt activity convictions were supported by sufficient evidence and because we find the trial court did not commit plain error in failing to instruct the jury on the monetary threshold required in order to prove all of the elements of the offenses, Appellant's second assignment of error is overruled.

{¶3} Further, as we found no abuse of discretion on the part of the trial court in denying Appellant's multiple motions for mistrial, and found no cumulative error, Appellant's third assignment of error is overruled. Finally, in light of our determination that Appellant's combined sentences, which constituted the maximum possible sentence of thirty-two years in prison,

were not contrary to law and were supported by the record, Appellant's fourth and final assignment of error is overruled. Our resolution of Appellant's fourth assignment of error is, however, qualified by our disposition of Appellant's first assignment error, which reversed the imposition of the eight-year prison term imposed for the sole count of possession of heroin. Thus, after remand, the total length of Appellant's combined sentences will be reduced from thirty-two years to twenty-four years. Accordingly, this matter is affirmed in part, reversed in part, and remanded with instructions.

FACTS

{¶4} The record reveals that Appellant, Jacques Goerges K. Daboni, was indicted on September 23, 2014, in case no. 14CR173 in the Meigs County Court of Common Pleas on multiple felonies, which included three counts of trafficking in heroin, one count of possession of heroin, and one count of engaging in a pattern of corrupt activity. Another indictment was filed in the Meigs County Court of Common Pleas on December 18, 2014, case no. 14CR232, charging Appellant with the commission of five additional felonies, which included five more counts of trafficking in heroin. Thereafter, an additional indictment was filed on March 17, 2015, case no.

15CR023, charging Appellant with an additional count of engaging in a pattern of corrupt activity, a second-degree felony.

{¶5} The charges stemmed from the execution of an arrest warrant upon Jeremy Burgess at 303 5th Street, Racine, Ohio, on September 4, 2014, at a residence believed to be owned by Chad Diddle and leased to Appellant. Upon entering the residence to arrest Burgess, law enforcement observed multiple baggies of what appeared to be heroin laying in plain view on a table inside the residence in the room where Burgess was located. A search warrant was subsequently issued and a search of the entire residence was conducted, which yielded additional drugs. According to the "More Particular Bill of Particulars" filed in case no. 14CR173, two controlled buys of heroin took place between confidential informants and Chad Diddle, who was working for Appellant. The bill further described the search of the residence owned by Diddle, but rented by Appellant, which occurred on September 4, 2014, and which resulted in the discovery of 45.84 grams of heroin, part of which had been individually packaged for sale and part of which was in ball form. One of the trafficking in heroin charges as well as the possession of heroin charges stemmed from the results of this search. The bill further described the basis for the engaging in a pattern of corrupt activity charge as follows:

"The purpose of the illicit enterprise is to make money for

Jacques Daboni, a.k.a. "Jock." Daboni set up a drug ring in

Meigs County, Ohio to distribute heroin. Daboni recruited

local heroin users and other individuals to become his 'runners'

and sell heroin on his behalf. Members of the enterprise

include, but are not limited to, Jacques Daboni, Chad Diddle,

Amber Duffy, Jeremy Burgess, and Theodore Brown.

Daboni would purchase heroin in bulk from areas like

Columbus, Ohio and transport to it [sic] Meigs County, Ohio.

Once in Meigs County, the heroin would then be divided up

into smaller quantities for re-selling.

Daboni recruited Chad Diddle to sell heroin for Daboni.

Diddle, in return, would get heroin as payment for selling on

behalf of Daboni. Chad Diddle owns a house located at 303 5th

Street, Racine, Ohio 45771. Daboni rented that residence as a

primary spot to distribute heroin to his runners to be resold

throughout Meigs County, Ohio. Daboni would also have

Diddle pay some of the utility bills on his behalf. Daboni

purchased cattle with his drug money and kept them on

Diddle's land.  On or about 7.28.14 Diddle sold .22g of heroin for Daboni.  On or about 8.16.14 Diddle sold 1.99g of heroin for Daboni.

Daboni had an electronic key code lock put on the door of the residence so his runners could access the heroin and continue to sell it on his behalf.

On 9/04/14, law enforcement searched Daboni's residence at 303 5th st. [sic] Racine, Ohio, 45771 and found 36 individually wrapped baggies of heroin totaling 11.04 grams inside a black case downstairs, along with 17 individually wrapped baggies of heroin totaling 9.86 grams on the table.  Also in the room with the heroin were two scales and scissors used for packaging.  An additional 24.94 grams of heroin was found in the upstairs-bedroom-closet in a secret compartment crafted into the side of the closet.

Daboni recruited Amber Duffy to sell heroin for Daboni. Duffy, in return, would get heroin as payment for selling on behalf of Daboni.  Those transactions include, but are limited to: on or about 5/01/14 Duffy sold 1g of heroin for Daboni, on

or about 5/23/14 Duffy sold .93g of heroin on behalf of Daboni; and or about 4/08/14 Duffy sold .46g of heroin for Daboni. Also, Daboni would have Duffy pay some of the utility bills on his behalf.

Daboni recruited Jeremy Burgess to sell heroin for Daboni. Burgess, in return, would get heroin as payment for selling on behalf of Daboni.

Daboni recruited Theodore Brown, a.k.a. "Teddy" to sell heroin for Daboni. Brown, in return, would get heroin as payment for selling on behalf of Daboni. The incidents forming the pattern of corrupt activity are the other charges in this indictment: counts one through four. They include, but are not limited to, two or more incidents of corrupt activities, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated and are not so closely related to each other and connected in time and place that they constituted a single event by engaging in, attempting to engage in, soliciting, coercing, or intimidating another to engage in any of the previous counts."

{¶6} According to the "More Particular Bill of Particulars" filed in case no. 14CR232, three controlled buys of heroin took place between confidential informants and Amber Duffy, and one controlled buy of heroin took place between confidential informants and Theodore Brown, both of which were working for Appellant. The bill further described the search of Appellant's residence on September 4, 2014, as the basis for the fifth drug trafficking count in that case. Additionally, the bill filed in this case contained the same detailed version of events set forth above.

{¶7} Finally, the "More Particular Bill of Particulars" filed in case no. 15CR023, which contained only one count of engaging in a pattern of corrupt activity, referenced the controlled buys involving Amber Duffy and Theodore Brown, which formed the basis of the trafficking counts in case no. 14CR232. The bill further contained the same detailed version of events set forth above, with respect to the alleged pattern of corrupt activity.

{¶8} Appellant pleaded not guilty to the charges and the matter proceeded through discovery. A motion in limine was filed prior to trial requesting, in pertinent part, that the State be prohibited from mentioning Appellant's ownership of cattle. In the motion, Appellant conceded there was no causal connection between ownership of cattle and the drug allegations contained in the indictment, but argued that the mention of such

was irrelevant and prejudicial. This Court was unable to locate an entry in the record regarding the grant or denial of this motion, but the parties agree on appeal there was an agreement that Appellant's ownership of cattle would not be mentioned before the jury. Appellant also filed a pre-trial motion to appear in plain clothes before the jury, which was granted.

{¶9} Further, Appellant, through counsel, requested suppression of statements made during calls from jail and also suppression of the results of the search warrant executed upon the 303 5th Street, Racine, Ohio address. A suppression hearing was held on both motions on July 22, 2015. It appears from the transcript of the hearing that counsel and the court agreed that the issue related to the suppression of the statements could be submitted through written legal arguments in the form of briefs. However, a hearing was held on the issue regarding the search of the residence alleged to be the home of Appellant in Racine, Ohio. The State presented two witnesses during the hearing, Agent William Gilkey, Director of the Major Crimes Task Force in Gallia and Meigs counties, and Agent William Stewart, also employed with the Gallia/Meigs Major Crimes Task Force as well as Ohio's Organized Crime Investigation Commission. The hearing transcript indicates it was the understanding of the parties from the beginning of the hearing that the State would go forward with its witnesses and then

Appellant would determine whether to go forward, with Appellant reserving the right for an opportunity to reconvene the hearing in two weeks if necessary.

{¶10}  The hearing proceeded with testimony by both Gilkey and Stewart and Appellant's counsel cross-examined both witnesses before the hearing was concluded.  Written post-hearing briefs were then submitted by counsel for both parties.  Nothing else happened regarding suppression until the final pre-trial hearing was held on October 8, 2015.  During the hearing, the trial court orally overruled both motions to suppress.  There was no indication at the hearing that Appellant's counsel desired an opportunity to present further argument or evidence on the issues.  Thereafter, Appellant fired his counsel and retained new counsel, who entered an appearance on October 16, 2015.  New counsel filed two pleadings, nearly three months after the suppression hearing was held, entitled "Request for Hearing on Suppression Motion," the first one on November 13, 2015, and the second one on November 16, 2015.  The contents of both pleadings were the same, noted that the suppression motion had not been ruled upon yet, that prior counsel had been given an opportunity to "reconvene this hearing if needed[,]" and asked the court for continuation of the suppression hearing. The trial court, however, issued a journal entry on November 25, 2015,

denying Appellant's request and formally overruling the motions. In its journal entry, the trial court cited the fact that Appellant's first counsel filed the motions to suppress and that his second counsel attended the suppression hearing and submitted additional briefs. The trial court denied both motions, citing its review of the motions, briefs and hearing, and noting it was further reflecting on its ruling from the bench on October 8, 2015.

{¶11} After denial of the suppression motions, the matter proceeded to a jury trial. As will be discussed more fully below, an issue occurred just prior to the beginning of trial in which Appellant was seen in jail clothes by a few members of the jury. This prompted Appellant to file a motion for mistrial, which was denied by the trial court. Pertinent witness testimony from the trial will be discussed below in our analysis portion of the opinion, however, the record reflects that Appellant was ultimately convicted on all counts after a jury trial, with the exception of count number four in case number 14CR232. Appellant appealed, but this Court determined that count four in case number 14CR232 appeared to remain pending, and as a result there was no final order vesting this Court with jurisdiction to consider the appeal. Accordingly, the appeal was dismissed. Thereafter, the trial court formally dismissed the pending count and Appellant again appealed. Thus, the matter is now properly before us for decision, and includes four

assignments of error raised by counsel, as well as four pro se assignments of

error.

## ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED IN VIOLATION OF MR. DABONI'S RIGHT UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND R.C. 2941.25, WHEN IT FAILED TO MERGE FOR SENTENCING OFFENSES THAT HAD A SIMILAR IMPORT, AROSE FROM THE SAME CONDUCT, AND WERE NOT COMMITTED SEPARATELY OR WITH A SEPARATE ANIMUS.

II.     JACQUES DABONI'S VERDICTS OF COUNT 5, CASE NO. 14CR173, ENGAGING IN A PATTERN OF CORRUPT ACTIVITY, AND COUNT I, CASE NO. 15CR023, ENGAGING IN A PATTERN OF CORRUPT ACTIVITY WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.  THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT ALL OF THE ESSENTIAL ELEMENTS OF THE CHARGES OF ENGAGING IN A PATTERN OF CORRUPT ACTIVITY IN VIOLATION OF R.C. 2923.32(A)(1) BEYOND A REASONABLE DOUBT, AND MR DABONI'S CONVICTION FOR ENGAGING IN A PATTERN OF CORRUPT ACTIVITY THEREFORE VIOLATES HIS RIGHTS TO DUE PROCESS.

III.    MR. DABONI'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WAS VIOLATED.

IV.    MR. DABONI'S MAXIMUM POSSIBLE SENTENCE ON ALL COUNTS IS NOT CLEARLY AND CONVINCINGLY SUPPORTED BY THE RECORD."

ADDITIONAL PRO SE ASSIGNMENTS OF ERROR

"V.    WHERE MY TRAIL COUNSEL'S INNEFECTIVE WHEN THEY
       DID NOT FINISH MY SUPPRESSION HEARING AND WHEN
       THEY WAIVED MY HEARING [SIC]?

VI.    WAS MY FOURTH AMENDMENT RIGHTS VIOLATED, WHEN
       OFFICERS HAD NO PROBABLE CAUSE FOR MY ARREST,
       AND WHEN OFFICERS SEARCHED 303 5TH ST RACINE, OH
       45771 WITHOUT A SEARCH WARRANT OR CONSENT TO
       SEARCH [SIC]?

VII.   DID JUDGE CARSON CROW ABUSE HIS DISCRETION, WHEN
       HE DIDN'T MAKE SURE THAT I HAD A FULL SUPPRESSION
       HEARING AS GUARANTEED BY THE 14TH AMENDMENT,
       AND DID HE ERROR WHEN HE DIDN'T MAKE SURE THAT
       MY CONSTITUTIONAL RIGHTS WHERE PROTECTED [SIC]?

VIII.  AM I ACTUALLY INNOCENT?"

{¶12}  We address Appellant's pro se assignments of error first, and

out of order, for ease of analysis.

PRO SE ASSIGNMENT OF ERROR VI

{¶13}  In his sixth pro se assignment of error, Appellant questions

whether his Fourth Amendment rights were violated and asserts that officers

had no probable cause for his arrest, and no probable cause when they

searched 303 5th Street, Racine, Ohio, 45771, without a search warrant or

consent to search.  More specifically, Appellant argues that there was no

firsthand knowledge of his dealing drugs, that none of his co-defendants or

any confidential informants testified at the probable cause hearing, and that

as such there was no probable cause for his arrest. Appellant further argues that there was no lease or other evidence introduced tying him to the residence located at 303 5th Street, Racine, Ohio, but that it being clear the State had tied the residence to him, he had an expectation of privacy therein which officers violated when they entered to execute an arrest warrant upon Jeremy Burgess, without a search warrant, and absent consent or exigent circumstances.

{¶14} Appellate review of a motion to suppress generally presents a mixed question of law and fact. *State v. Gurley*, 4th Dist., 2015-Ohio-5361, 54 N.E.3d 768, ¶ 16; citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. At a suppression hearing, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.*; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Thus, when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Gurley* at ¶ 16; citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However, "[a]ccepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Id.*; citing *Roberts* at ¶ 100.

{¶15} With respect to Appellant's argument regarding the issuance of his arrest warrant, we initially note that neither of Appellant's motions to suppress challenged the issuance of his initial arrest warrant. One motion to suppress challenged the initial warrantless entry and subsequent search of the residence pursuant to a search warrant, and the other motion sought to suppress recordings of statements made by Appellant on the jail telephone system. In fact, there is very little information in the record regarding the issuance of Appellant's initial arrest warrant, other than the fact that U.S. Marshalls sought the assistance of the local law enforcement in Meigs County in the execution of several arrest warrants, which included warrants for Appellant and Jeremy Burgess. Although the arrest warrants were apparently provided to the defense and were discussed during the suppression hearing, simply by way of background, it does not appear they were admitted as exhibits, and they are not part of the record before us on appeal.

{¶16} "It is well settled that issues not raised in an original motion to suppress cannot be raised for the first time on appeal." *State v. Jones*, 4th Dist. Highland No. 04CA9, 2005-Ohio-768, ¶ 18; *see also State v. Markins*, 4th Dist. Scioto No. 10CA3387, 2013-Ohio-602, ¶ 25. As we stated in *Jones*, this is no mere technicality. *Id*. Crim.R. 47 requires a motion to

suppress to "state with particularity the grounds upon which it is made and [to] set forth the relief or order sought." *State v. Rife*, 4th Dist. Ross No. 11CA3276, 2012-Ohio-3264, ¶ 17. "These requirements exist because 'the prosecutor cannot be expected to anticipate the specific legal and factual grounds upon which the defendant challenges the legality of a warrantless search.' " *Id.;* quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). Here, because the issue of the validity of Appellant's initial arrest warrant was not raised below, we should not consider this portion of Appellant's pro se assignment of error.

{¶17} We do, however, review the portion of this assignment of error which challenges the initial entry by law enforcement into the residence located at 303 5th Street, Racine, Ohio, which Appellant concedes was tied to him, and subsequent search thereof. As set forth above, assuming the residence was sufficiently linked with Appellant in terms of establishing it as his residence, Appellant argues he had an expectation of privacy there that was violated when law enforcement entered without a search warrant, absent consent or exigent circumstances, to execute an arrest warrant for Jeremy Burgess. Although this basis was mentioned in the motion to suppress the

search warrant, it was not well-developed.[1]  It appears the State's position below was that Jeremy Burgess had been staying at the residence at issue, thus making him a resident, and alternatively that law enforcement entered in hot pursuit of Burgess, thus establishing the exigent circumstances exception to the warrant requirement.  However, neither position was well-developed or expounded upon at length by the State either.

{¶18}  The Fourth Amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourth Amendment protects against unreasonable government intrusions into areas where legitimate expectations of privacy exist. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476 (1977).  The Fourth

---

[1] A review of the record suggests Appellant denied, throughout the proceedings below, that he had any connection with the residence located at 303 5th Street, Racine, Ohio.  This is likely the reason why the motion to suppress the search warrant only briefly mentions the expectation of privacy third parties possess in their homes when it comes to execution of search warrants against nonresidents.  However, as discussed more fully below, Appellant appears to now concede, and we find the State adequately established, that Appellant was, in fact, renting the residence from Chad Diddle, despite the fact the State could not produce a written lease and that the search of the residence failed to yield any documents tying Appellant to the residence.

Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408 (1978); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092 (1976); and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022 (1971). The touchstone of a Fourth Amendment analysis of lawfulness of a search is whether a person has a constitutionally protected reasonable expectation of privacy. *Katz v. United States, supra; California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809 (1986).

{¶19} When one's home is to be searched, the warrant requirement embodied in the Fourth Amendment constitutes the most compelling protection against unreasonable governmental intrusions. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732. Warrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191

(1948); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969) (search of arrested suspect and area within control for weapons); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642 (1967) (hot pursuit of fleeing suspect); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826 (1966) (imminent destruction of evidence). Thus, for a warrantless search to be valid, it must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409 (1985).

{¶20} As set forth above, Appellant contends that his Fourth Amendment rights were violated when law enforcement entered the residence at issue to execute an arrest warrant upon Jeremy Burgess. The basis of this argument appears to be, though not in so many words, that Appellant had an expectation of privacy in the residence, and that law enforcement could not enter absent consent or exigent circumstances, to execute an arrest warrant upon Burgess, a nonresident. The State simply responds by stating that law enforcement were "lawfully in the residence to execute an arrest warrant on Jeremy Burgess." Implicit in this argument is that the State contends Burgess was a resident, and that they had consent to enter or entered pursuant to exigent circumstances.

{¶21} We first address the idea that Burgess, along with Appellant, was a resident of 303 5th Street, Racine, Ohio. The only evidence introduced during the suppression hearing on this issue consisted of testimony by Agent William Gilkey. Agent Gilkey testified Meigs County law enforcement, along with U.S. Marshalls, went to the 303 5th Street address to execute the arrest warrants on both Appellant and Burgess based upon information and intelligence, from their investigation and information obtained from confidential informants, that Appellant was renting the house from Chad Diddle and that Burgess was staying there also. There was no evidence that Burgess was actually a resident of that address and, in fact, the transcript of the suppression hearing indicates that Burgess's arrest warrant specified an address for him in West Virginia. Based upon nothing more than this testimony, we cannot conclude that law enforcement had a reasonable belief Burgess was actually living at the residence in question. *See State v. Mansaray*, 8th Dist. Cuyahoga No. 93562, 2010-Ohio-5119, ¶ 18 ("when police execute an arrest warrant, they can only enter a residence of a third party without a search warrant if they have a reasonable belief that the person named in the warrant lives at the residence and is in fact home."); citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, syllabus (1980) (holding police cannot enter a suspect's home to make an arrest without a

warrant, consent, or exigent circumstances); *Steagald v. U.S.*, 451 U.S. 204, 212, 101 S.Ct. 1642 (1981) (holding that to enter a third party's residence to effectuate an arrest warrant on the party's guest, the police must first obtain a search warrant for the residence.)

{¶22} Having determined there was not enough evidence to conclude Burgess was a resident of the residence in question, we must consider whether law enforcement could properly enter the residence to execute an arrest warrant without first obtaining a search warrant. As set forth above, the two exceptions to the warrant requirement are consent and exigent circumstances. There is no dispute that no consent was given to enter the residence. The State does, however, mention in its memorandum contra the motion to suppress that law enforcement was in hot pursuit of Burgess as they entered the residence. The State bears the burden of establishing exigency from the totality of the circumstances involved. *State v. Letsche*, 4th Dist. Ross No. 02CA2693, 2003-Ohio-6942, ¶ 20; citing *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091 (1984); *State v. Sladeck*, 132 Ohio App.3d 86, 724 N.E.2d 488 (1st Dist.1998); *State v. Brooks*, 10th Dist. Franklin No. 94APA03–386, 1995 WL 390935 (June 27, 1995). One of the exigent circumstances justifying a warrantless entry into a home is when

police are in "hot pursuit" of a fleeing suspect. *See United States v. Santana*,

427 U.S. 38, 42–43, 96 S.Ct. 2406 (1976).

{¶23}  In *State v. Howard*, 75 Ohio App.3d 760, 774-775, 600 N.E.2d

809 (1991), this Court rejected an argument that the exigent circumstances,

or the hot pursuit exception to the warrant requirement, applied to an entry

by law enforcement into a residence of a third party to execute an arrest

warrant upon a nonresident.  In *Howard*, the suspect named in the arrest

warrant was not in a public place when first observed by the officer, but

rather was observed inside the residence as the officer peered through a

window of the residence. *Id*. at 775.  In rejecting the State's hot pursuit

argument, we distinguished the case factually from cases like *Warden v.

Hayden, supra,* where the United States Supreme Court recognized the right

of police to make a warrantless entry in order to arrest a robber where the

police had probable cause to believe the robber had entered the house just

five minutes before they arrived on the scene, and *United States v. Santana*,

where faced with a fact pattern involving a suspect initially standing in the

doorway of her home and then retreating to the interior of her home, the

Court found that the suspect was located in a public place while standing in

her doorway, and that she could not thwart her arrest by retreating from a

public place to a private place. *Howard* at 774–775.  The *Santana* court

ultimately determined that the police were in hot pursuit and that a

warrantless entry into the residence was permitted. *Id*. at 775.

{¶24} Here, law enforcement officers went to the residence located at

303 5th Street, Racine, Ohio, to execute arrest warrants upon Appellant, who

they believed was renting the residence from Chad Diddle, and upon Jeremy

Burgess, who they believed was also staying there. The record reflects that

upon arriving at the residence, law enforcement set up a perimeter and began

surveillance. While conducting surveillance, a vehicle fitting the description

of the vehicle driven by Burgess arrived and entered the residence. Because

law enforcement only saw him from behind and could not positively identify

him, they waited outside with a plan to arrest him when he exited the house.

However, when Burgess exited the house, he quickly ran to his car and then

turned around and ran back into the house. Because law enforcement

officers were able to see his face at that time and positively identify him,

they pursued him into the residence and arrested him.[2] Thus, Burgess

initially arrived at the residence from a public place and entered, and then

exited back into a public place (his vehicle) and once again re-entered the

residence. Applying the reasoning above to these facts, it appears the hot

pursuit, or exigent circumstances, exception to the warrant requirement

---

[2] Both Agents Gilkey and Stewart testified that they knocked on the door and announced their presence upon entering the residence.

applied so as to allow law enforcement to enter the dwelling of a third party (Appellant), without first obtaining a search warrant or obtaining consent, to execute an arrest warrant upon a nonresident (Burgess).

{¶25} We further note that because law enforcement officers were present at the residence to also execute an arrest warrant upon Appellant, who they reasonably believed was a resident, their entry was further justified. As this Court previously acknowledged in *Howard*, "* * * an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Howard* at 776; quoting *Steagald, supra;* citing *Payton v. New York, supra.* A review of the record indicates law enforcement went to the residence in question to arrest both Appellant and Burgess. Although Appellant was not actually in the residence at the time, there is no indication law enforcement knew he was not there, but only that while conducting surveillance, Burgess happened to show up as well. Further, the record indicates while pursuing Burgess into the residence, the officers knocked on the door, which caused the door to partially open, and then announced their presence upon entering, despite the fact they were operating under the hot pursuit provision of the exigent circumstances exception to the warrant requirement.

{¶26} We now must consider whether the items observed inside the residence, in plain view, established probable cause for the subsequent issuance of a search warrant of the residence. The "plain view" doctrine is a judicially recognized exception to the Fourth Amendment's warrant requirement. *See State v. Akron Airport Post No. 8975, VFW of the US*, 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985). A warrantless search or seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be plainly viewed; (2) the officer has a lawful right of access to the object; and (3) the incriminating nature of the object is immediately apparent. *State v. Hunter*, 8th Dist. Cuyahoga No. 92032, 2009–Ohio–4194, ¶ 12; citing *State v. Steward*, 8th Cuyahoga Dist. No. 80993, 2003–Ohio–1337; *Horton v. California*, 496 U.S. 128, 136–137, 110 S.Ct. 2301(1990); *State v. Wilmoth*, 1 Ohio St.3d 118, 438 N.E.2d 105 (1982); *State v. Williams*, 55 Ohio St.2d 82, 377 N.E.2d 1013 (1978). "The 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." *State v. Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925, paragraph three of the syllabus (1986). "In ascertaining the required probable cause to satisfy the 'immediately

apparent' requirement, police officers may rely on their specialized knowledge, training and experience[.]" *Id.* at paragraph four of the syllabus.

{¶27} In light of our conclusion that law enforcement lawfully entered the residence in execution of the arrest warrant on Jeremy Burgess, the evidence they observed in plain view, consisting of multiple baggies of a substance appearing to be heroin, was properly used as probable cause for the subsequent issuance of the search warrant that was granted for a full search of the residence. Thus, and in light of the foregoing, we conclude that the trial court's decision denying Appellant's motion to suppress the results of the search was supported by competent, credible evidence. Accordingly, Appellant's sixth pro se assignment of error is without merit.

PRO SE ASSIGNMENTS OF ERROR V AND VII

{¶28} We address Appellant's fifth and seventh pro se assignments of error in conjunction with one another for ease of analysis. In his fifth pro se assignment of error, Appellant questions whether his trial counsel was ineffective due to either not finishing, or waiving, his suppression hearing. In his seventh pro se assignment of error. Appellant questions whether the trial court abused its discretion when it didn't insure he had a full suppression hearing and that his constitutional rights were protected.

{¶29} With respect to Appellant's argument regarding defense counsel, we note that criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441 (1970); *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21.  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).  "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).  "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.  Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448,

721 N.E.2d 52, (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶30} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶31} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373

(1989), paragraph three of the syllabus.  Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. *See State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002-Ohio-1597; *State v. Kuntz*, 4th Dist. Ross No. 1691, 1992 WL 42774.

{¶32}  With respect to Appellant's argument related to the trial court, we note that an "abuse of discretion" means that the court acted in an " 'unreasonable, arbitrary, or unconscionable' " manner or employed " 'a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67; quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.  A trial court generally abuses its discretion when it fails to engage in a " 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14; quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).  Additionally, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.  We are mindful, however, that no court has the authority, within its discretion, to commit an error of law. *State*

*v. Boone*, 2017-Ohio-843, 85 N.E.3d 1227 (10th Dist.), ¶ 9; citing *State v. Moncrief*, 10th Dist. Franklin No. 13AP-391, 2013-Ohio-4571, ¶ 7. *See also 2–J Supply Co. Inc. V. Garrett & Parker, LLC*, 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, ¶ 9.

{¶33} As set forth above, Appellant had three different attorneys during the proceedings below. His first attorney filed two suppression motions, one dealing with statements made by Appellant while utilizing the recorded telephone lines in the jail, and the other dealing with the search of a residence located at 303 5th Street, Racine, Ohio, alleged by the State to be Appellant's residence. A combined suppression hearing was held on both issues, with Appellant's second attorney in attendance. The transcript from the hearing indicates counsel for both parties and the court all agreed that the legal issues surrounding the admission of Appellant's recorded statements on the jail telephone system could be argued in the form of written briefs submitted to the court for decision. Written briefs were thereafter submitted.

{¶34} However, a hearing was actually held on the issue of the suppression of the search. As indicated above, the State put on two witnesses, both agents with the Gallia/Meigs Major Crimes task force that were involved in the service of the arrest warrant on Burgess and the subsequent search of the residence at issue located in Racine, Ohio. Defense

counsel cross-examined both of the State's witnesses before the hearing was concluded. Although defense counsel reserved the right to reconvene the hearing, if necessary, in two weeks, that request was never made by Appellant's second counsel. A final pre-trial hearing was held on October 8, 2015, where suppression was discussed and the trial court denied the pending motions from the bench. There was no indication from Appellant's second counsel at that time that he desired a further hearing on the pending motions. In fact, it was not until November 13, 2015, when Appellant's third counsel entered the case, that a request was made for a continued suppression hearing. At this point nearly three months had passed since the suppression hearing, and the trial court had already orally denied the motions a month earlier at the final pre-trial hearing.

{¶35} Based on these facts, we find no error or abuse of discretion on the part of the trial court in refusing to permit further hearing on the suppression issues. Further, in light of our determination under Appellant's second pro se assignment of error above, which found the trial court properly denied Appellant's motion to suppress the search of the residence, we cannot conclude that Appellant received ineffective assistance of trial counsel for failing to resume the suppression hearing. The failure to resume, or permit resumption, of the hearing, in our view, did not affect the outcome

of the proceedings. Accordingly, we find no merit to these assignments of error.

PRO SE ASSIGNMENT OF ERROR VIII

{¶36} In his eighth pro se assignment of error, Appellant questions whether he is actually innocent. The issue he presents for review is: "Am I actually innocent?" In this assignment of error, Appellant reasserts the argument that he did not receive a full and fair suppression hearing and he questions the credibility of the evidence and testimony introduced at trial, suggesting that the State's witnesses were admitted drug users and drug dealers who were trying to obtain a plea deal. The State contends Appellant is essentially arguing that his convictions are not supported by sufficient evidence. Based upon the wording of Appellant's arguments, we agree.

{¶37} However, as noted by the State, Appellant's appellate counsel raised a sufficiency of the evidence argument under the second assignment of error herein, alleging the State failed to present sufficient evidence to support Appellant's convictions for engaging in a pattern of corrupt activity. As will be more fully discussed below, this Court has determined that those convictions were supported by sufficient evidence. Further, the other trafficking in drugs and possession of drugs offenses of which Appellant was also convicted served as the underlying offenses for the engaging in a

pattern of corrupt activity convictions, which we have found were supported by sufficient evidence. As such, we find no merit to Appellants' eighth and final pro se assignment of error. Accordingly it is overruled.

## ASSIGNMENT OF ERROR I

{¶38} We next address the assignments of error raised by appellate counsel. In his first assignment of error raised by appellate counsel, Appellant contends that the trial court erred in failing to merge, for purposes of sentencing, counts which he claims constituted allied offenses of similar import. Appellant specifically contends that the trial court erred in failing to merge the offenses of trafficking and possession of heroin that occurred on September 4, 2014, alleging the offenses were not committed with a separate animus. The State argues the trial court did not err in refusing to merge those counts for purposes of sentencing, arguing the offenses did not arise from the same conduct, and because they were committed separately or with a separate animus.

## Standard of Review

{¶39} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," and this protection applies to Ohio citizens through the Fourteenth Amendment and is

additionally guaranteed by Article I, Section 10 of the Ohio Constitution. *State v. Neal*, 57 N.E.3d 272, 2016-Ohio-64, ¶ 50 (4th Dist.). This constitutional protection prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201 (1989).

**{¶40}** "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Pickett*, 4th Dist. Athens No. 15CA13, 2016-Ohio-4593, ¶ 54; quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23; *accord State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603; *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 11. R.C. 2941.25 provides:

> "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶41} As noted in Pickett, the Supreme Court of Ohio, in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, instructed that courts conduct a three-part inquiry to determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25:

"(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? *Pickett, supra,* at ¶ 55. An affirmative answer to any of the above will permit separate convictions. *Id.* The conduct, the animus, and the import must all be considered." *Id.*; quoting *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12; citing *State v. Ruff* at ¶ 31 and paragraphs one, two, and three of the syllabus.

{¶42} Offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Pickett*, at ¶ 56; quoting *Ruff* at ¶ 21.

Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Trial court decisions regarding allied offenses determinations are generally reviewed de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 8. We further note that the defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18; citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

Legal Analysis

{¶43} Here, as a result of the search of his residence on September 4, 2014, Appellant was indicted and found guilty of two counts of trafficking in heroin and one count of possession of heroin. Appellant was also found guilty of several other counts of trafficking in heroin; however, the ones at issue under this assignment of error only relate to the charges arising from the September 4, 2014 search. More specifically, in case no. 14CR173, Appellant was found guilty of second-degree trafficking in heroin in violation of R.C. 2925.03(A)(1) and (C)(6)(a) (hereinafter "trafficking count one") and second-degree possession of heroin in violation of R.C.

2925.11(A) and (C)(6)(a), both occurring on September 4, 2014. Appellant was also found guilty, in case no. 14CR232, of second-degree felony trafficking in heroin in violation of R.C. 2925.03(A)(2) (hereinafter "trafficking count two"), also occurring on September 4, 2014. The trial court merged the trafficking counts for purposes of sentencing and sentenced Appellant to a mandatory eight-year term of imprisonment. Appellant was sentenced to an eight-year term of imprisonment on the possession count, which the trial court refused to merge with the trafficking counts, despite the urging of defense counsel.

{¶44} R.C. 2925.03 governs trafficking offenses and provides, in pertinent part, as follows with respect to both trafficking counts:

"(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

R.C. 2925.11(A) governs drug possession offenses and provides, in pertinent

part, as follows:

> "(A) No person shall knowingly obtain, possess, or use a
>
> controlled substance or a controlled substance analog."

{¶45} Appellant argues on appeal that the possession count should

have merged with the merged trafficking counts, arguing that there was no

evidence presented at trial indicating Appellant possessed the heroin to use,

or that he was a drug user. Appellant further argues that the State

specifically argued during sentencing that the evidence was clear that

Appellant was not a drug user. The State argues the possession count does

not merge with the trafficking counts because the offenses did not arise from

the same conduct, and because they were committed separately and with a

separate animus.

{¶46} The record reveals that trafficking count one stemmed from

heroin that was found downstairs that was individually packaged, which was

sold or offered to be sold. Trafficking count two stemmed from heroin that

was found downstairs in another location that was individually packaged and

prepared for shipment, transport, delivery, or distribution. Both of these

trafficking counts stemmed from law enforcement finding, collectively,

fifty-three baggies of individually wrapped heroin in two different locations

in the downstairs of Appellant's residence. The total amount of heroin found in these two downstairs locations was 20.9 grams. Conversely, the possession count stemmed from 24.94 grams of heroin found in an upstairs bedroom closet of the same residence that was not individually packaged. Thus, the total amount of heroin found in Appellant's residence was 45.84 grams and the total amount is what was cited in each of the separate offenses contained in the indictments and was apparently used to justify elevating the felonies to higher levels than the base fifth-degree felony as provided for in the statutes. This combined amount of 45.84 grams is referenced as well in the "More Particular Bill of Particulars" filed by the State in each individual case.[3]

**{¶47}** Appellant argues that under the *Ruff* analysis, all of these offenses should have merged because, under the first prong of *Ruff*, they were not dissimilar in import or significance, as they did not involve separate victims and no separate or identifiable harm resulted. Appellant

---

[3] Both the trafficking in heroin count and possession of heroin count contained in the lower case no. 14CR173, which are at issue under this assignment of error, were originally charged in the indictment as first-degree felonies. In order to constitute a first-degree felony, the gram weight must be 50 grams or higher. Just prior to trial, Appellant filed a motion to dismiss these two trafficking counts based on the insufficiency of the gram weight, which was 45.84 grams, not 50. The State opposed the motion. The trial court denied the motion but noted the error and stated it could be corrected by amending the indictment. While there is no indication in the record that the indictment was amended, it appears the jury was instructed on second-degree felonies as to each count, rather than first-degree felonies. The verdict forms further demonstrate that Appellant was found guilty of second-degree felonies, rather than first-degree felonies, with specific findings by the jury that Appellant trafficked and possessed an amount of heroin between 10 grams and under 50 grams. There is no argument raised related to this issue on appeal. We merely note it to explain the discrepancy in the record.

argues that under the second prong of *Ruff*, the offenses were not committed

separately, noting the drugs were recovered on the same day, in the same

house and were the same substance. Appellant argues, under the third prong

of *Ruff*, that the crimes were not committed with a separate animus, as all of

the evidence presented at trial indicated a single motivation by Appellant,

which was to traffic heroin. Quoting from the sentencing transcript,

Appellant points out the following argument made by the State during

sentencing:

> "The testimony was pretty clear that uh the Defendant was not a
>
> drug user. He was here purely to traffic in drugs."

{¶48} The State argues, under the first step of the *Ruff* analysis,

which requires consideration of whether the offenses were committed with

similar import or significance, that the victim for each of the offenses is the

same, and the victim is society. However, the State contends that the

resulting harm from the offenses is separate and identifiable. The State

argues the harm resulting from the trafficking counts is to other individuals

who would then possess and traffic the heroin themselves or use it. The

State argues that the harm resulting from the possession was different in that

no other individuals were harmed by Appellant merely possessing the

heroin. The State makes no argument that Appellant was harmed by the

possession of the heroin or that he intended it for his personal use.  Rather, the State argues other individuals would be "harmed or potentially harmed when Appellant sells or ships that heroin to others."  Based upon this reasoning, the State argues the offenses at issue, under these facts, were of dissimilar import or significance.

{¶49}  The State argues under the second step of the *Ruff* analysis that the offenses were committed separately, and argues the fact that the drugs at issue were recovered on the same day, in the same house and were the same substance, does not equate to the offenses not being committed separately. The State argues that Appellant took active steps to engage in trafficking of the heroin found downstairs, which was individually packaged for sale.  It further argues there was no evidence Appellant took any steps to engage in trafficking of the heroin found in ball form upstairs.

{¶50}  The State argues, under the third step of the *Ruff* analysis, that the trafficking and possession counts here were committed with a separate animus and motivation.  The State argues that Appellant took active steps to prepare the specific heroin that was the subject of the trafficking counts for sale or shipment, but that he did not possess the heroin that is the subject of the possession offense with the same animus or motivation.  The State argues that "[w]hile Appellant likely would have trafficked the heroin that

was found upstairs, he took no active steps to traffic that heroin and possessed no immediate motive to traffic that heroin." The State further argues that speculation that Appellant would have trafficked the heroin at some point in the future is not enough to support a charge of trafficking in heroin, and that Appellant merely possessed the heroin found upstairs "with the animus or motivation to simply possess it at that time."

{¶51} The State relies upon *State v. Rodriguez*, 2016-Ohio-452, 59 N.E.3d 619 in support of its arguments. Rodriguez was sentenced separately for trafficking, stemming from the seizure of marijuana from his associate's backpack shortly after leaving Rodriguez's residence, and possession of marijuana, stemming from the subsequent discovery of marijuana found in Rodriguez's apartment shortly thereafter. *Id.* at ¶ 34. The *Rodriguez* court refused to merge the trafficking and possession counts for purposes of sentencing, arguing that there was no evidence in the record Rodriguez possessed and trafficked the marijuana with a single animus, for the purpose of trafficking. *Id.* at ¶ 28. The court went on to note that possession of drugs and trafficking of drugs are not always allied offenses of similar import when they are committed separately or where a different animus or motivation is present. *Id.* at ¶ 30. The State also relies on *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, which found that

possession and trafficking of heroin were not allied offenses of similar import where the defendant sold two to three balloons of heroin at a time but retained additional balloons of heroin that were not sold or offered for sale.[4]

{¶52} Appellant argues the State's reliance on *Rodriguez* is misplaced, arguing that the present case is factually distinguishable from *Rodriguez* as the record here clearly indicates that Appellant always possessed the heroin at issue for purposes of trafficking. Appellant cites this Court's prior reasoning in *State v. Shaw*, 4th Dist. Scioto No. 07CA3190, 2008-Ohio-5910, which focused on whether the record showed the defendant's sole purpose in possessing drugs was to sell them. In *Shaw*, we held that trafficking and possession of crack cocaine were allied offenses of similar import where there was no evidence that the defendant intended to retain a portion of the crack cocaine for personal use, and where the defendant's confession and the prosecutor's statement indicated the defendant possessed the drugs with the purpose of selling them. *Id.* at ¶ 14. The State criticizes Appellant's reliance on *Shaw*, arguing the law regarding the analysis of allied offenses of similar import has changed since *Shaw* was decided in 2008, and noting *Shaw* employed the two-step allied offenses

---

[4] We note that the *Montoya* case does not delve into the question of whether the defendant was a drug user himself, or whether there was evidence to indicate he retained the leftover drugs with an intent to use them himself, which question we find pertinent to our analysis on appeal. Without more information, we cannot say we agree with the result of *Montoya*.

analysis set forth in *State v. Cabrales*, which it argues has since been

replaced with the three-step analysis set forth in *Ruff*.

{¶53} As set forth in *Rodriguez, supra,* although it is possible to

possess a drug with the same animus and conduct necessary to traffic it,

once the drug is initially possessed, a separate animus "distinct in time,

supported by different conduct" can take place resulting in the additional

offense being committed separately. *Id.* at ¶ 29. Thus, possession and

trafficking offenses may be allied offenses of similar import, or not,

depending on the particular facts and motivations of those involved. After

contemplating the questions set forth in *Ruff*, we disagree with the trial

court's conclusion that the possession offense should not merge with the

trafficking offenses. First, with respect to the first prong of the *Ruff*

analysis, we conclude the offenses were of similar import and significance.

The offenses of possession and trafficking in drugs, in this case heroin, are

similar in significance and import where, as is the case here, the victims of

the offense were the same and the harm was not separate and identifiable.

As conceded by both parties, the victims of these offenses is society in

general. We are not persuaded by the State's argument that the possession

offense, under these facts (which include no indication Appellant was a drug

user himself), had a different victim than the trafficking offenses or resulted

in a separate, identifiable harm.  Thus, we conclude based upon the facts before us that the offenses herein are of similar import and significance.

{¶54}  Second, with respect to the second prong of the *Ruff* analysis, we cannot conclude that the offenses were committed separately.  As argued by Appellant, the trafficking and possession offenses at issue stemmed from heroin found during a search of Appellant's residence.  All charges involve drugs found on the same date, in the same residence, and involving the same substance: heroin.  While we agree with the State that these factors do not automatically equate to the offenses not being committed separately, we believe under the facts presently before us, they do.  This case is factually distinguishable from *Rodriguez* in that Rodguez's trafficking charge was based upon drugs found in a backpack of his associate that were found outside in a car, while the possession charge was based upon drugs found inside his mother's apartment. *Id.* ¶ 28.  Here, all of the heroin was found inside Appellant's residence, albeit in different locations.  We believe this situation is much more similar to the facts in *State v. Shaw, supra,* where *Shaw* was charged with possession and trafficking of drugs after a traffic stop led to the discovery of drugs on his person, and also in a C.D. case in the vehicle he was driving. *Shaw* at *1.  This court determined on appeal that Shaw's sentences for trafficking and possession should have merged where

there was no evidence in the record to suggest he intended to retain a portion of the drugs at issue for his own use. *Id.* at *5.

{¶55} We further reject the State's argument that the offenses should not merge because Appellant took active steps to traffic the heroin found downstairs, but did not take active steps to traffic the heroin found upstairs. Not only is there no evidence in the record indicating Appellant took active steps to traffic the heroin that was the subject of the possession offense, there is likewise no evidence in the record suggesting Appellant was a drug user or committed the possession offense separately to use the heroin himself. In light of *Shaw*, we believe this lack of evidence favors finding the offenses were not committed separately, especially when considering the analysis under the next step of the *Ruff* test.

{¶56} Finally, with respect to the third prong of the *Ruff* analysis, we cannot conclude these offenses were committed with a separate animus or motivation. While the State argued in its brief that Appellant possessed the heroin at issue merely to possess it, it also conceded in its brief that Appellant likely would have eventually trafficked it. As argued by Appellant, there is simply no evidence in the record to suggest Appellant was a drug user, or that his motivation in possessing the heroin found upstairs was possessed for the purpose of personal use. In this regard, the

facts before us are directly on point with *Shaw, supra.* In fact, as set forth above, the State explicitly argued as much at the sentencing hearing, stating it was clear that Appellant's purpose was "purely to traffic in drugs." The reasonable inference from the record before us is that Appellant and/or those working for him simply had not packaged the upstairs heroin for sale *yet*. Conversely, in *Rodriguez, supra,* at ¶ 28, the court noted that there was nothing in the record before it "to establish that Rodriguez possessed the marijuana and trafficked a portion of it with only one animus or motivation * * *." Here there is absolutely no evidence in the record Appellant was a drug user or possessed with the motivation to use.

{¶57} Further, and contrary to the State's argument, we believe the analysis set forth in *State v. Shaw, supra,* is applicable to the facts presently before us, despite the fact that it was released prior to the more detailed allied offenses test set forth in *Ruff.* In reaching its decision, *Shaw* relied on the reasoning of *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, for the proposition that trafficking and possession of drugs are allied offenses of similar import. *Shaw* at ¶ 13; citing *Cabrales* at ¶ 31. However, as noted in *Shaw*, the *Cabrales* test requires consideration of the defendant's conduct to determine whether the offenses were committed separately or with a separate animus. *Id.* at ¶ 14; citing *Cabrales* at ¶ 14. In

that regard, the *Cabrales* test is not unlike the test set forth in *Ruff*. In fact, both the First and Eighth District Courts of Appeals have stated that the conclusion reached in *Cabrales* survives the application of *Ruff*, and thus they declined to depart from it. *See State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580, ¶ 42 (8th Dist. 2015) and *State v. Murph*, 1st Dist. Hamilton No. C-150263, 2015-Ohio-5076, ¶ 7. Thus, we find *Shaw* is still relevant, instructive and applicable.

{¶58} In light of the foregoing, we conclude that the trial court erred in failing to merge the possession of heroin with the already-merged trafficking in heroin counts, for purposes of sentencing. For this reason, we sustain Appellant's first assignment of error. Accordingly, we reverse the trial court's imposition of sentences on these counts and remand this matter to the trial court with instructions to impose a single, mandatory sentence of eight years for the all three merged offenses.

## ASSIGNMENT OF ERROR II

{¶59} In his second assignment of error raised by appellate counsel, Appellant contends that his convictions for engaging in a pattern of corrupt activity were not supported by sufficient evidence and that the trial court erred in denying his Crim.R. 29(A) motion for acquittal. Appellant argues the State did not present sufficient evidence that the monetary threshold of

$1,000.00 was reached for each of the charges as required by R.C. 2923.31(I)(2)(c). Appellant alternatively argues that the trial court failed to properly instruct the jury with regard to the financial limitations required by the statute and, as such, his convictions cannot stand because the jury was never instructed on a critical element of the offense. The State contends that Appellant's convictions for engaging in a pattern of corrupt activity were proven beyond a reasonable doubt, arguing that it presented sufficient evidence of each element of the offense, including the monetary threshold set forth in R.C. 2923.31(I)(2)(c). The State further contends that because Appellant failed to object to the jury instructions regarding engaging in a pattern of corrupt activity, the issue has not been preserved for appeal, absent plain error.

### Standard of Review

{¶60} Under Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of acquittal * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." *State v. Wright*, 2016-Ohio-7654, 74 N.E.3d 695, ¶ 21 (4th Dist.). "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *Id.;* quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-

Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Husted*, 2014-Ohio-4978, 23 N.E.3d 253, ¶ 10 (4th Dist.). "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Wright* at ¶ 22; quoting *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). In making its ruling a court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction. In other words, the motion does not test the rational persuasiveness of the State's case, but merely its legal adequacy. *State v. Reyes–Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 15.

Legal Analysis

**{¶61}** As set forth above, Appellant contends that his convictions for engaging in a pattern of corrupt activity were not supported by sufficient evidence. Appellant's argument, however, is limited to an argument the State did not allege or prove the $1,000.00 monetary threshold required in order to prove all of the elements of those offenses. Appellant also argues

that because the instructions provided to the jury did not inform the jury of the $1,000.00 monetary threshold that must be met in order to prove the offense of engaging in a pattern of corrupt activity, that his convictions cannot stand. We begin our review by addressing the jury instruction argument raised by Appellant.

{¶62} We initially note that Appellant was indicted and convicted on multiple counts of trafficking in heroin, as well as possession of heroin, which served as the predicate offenses for his two convictions of engaging in a pattern of corrupt activity. R.C. 2923.32, Ohio's RICO statute, provides in section (A)(1) that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.31 provides definitions for this chapter of the Ohio Revised Code and provides in section (I)(2)(c) that "corrupt activity" is defined as conduct constituting any of the following:

> "Any violation of section 2907.21, 2907.22, 2907.31, 2913.02, 2913.11, 2913.21, 2913.31, 2913.32, 2913.34, 2913.42, 2913.47, 2913.51, 2915.03, *2925.03*, 2925.04, 2925.05, or 2925.37 of the Revised Code, any violation of section *2925.11* of the Revised Code that is a felony of the first, second, third,

or fourth degree and that occurs on or after July 1, 1996, any

violation of section 2915.02 of the Revised Code that occurred

prior to July 1, 1996, any violation of section 2915.02 of the

Revised Code that occurs on or after July 1, 1996, and that, had

it occurred prior to that date, would not have been a violation of

section 3769.11 of the Revised Code as it existed prior to that

date, any violation of section 2915.06 of the Revised Code as it

existed prior to July 1, 1996, or any violation of division (B) of

section 2915.05 of the Revised Code as it exists on and after

July 1, 1996, when the proceeds of the violation, the payments

made in the violation, the amount of a claim for payment or for

any other benefit that is false or deceptive and that is involved

in the violation, or the value of the contraband or other property

illegally possessed, sold, or purchased in the violation *exceeds*

*one thousand dollars*, or any combination of violations

described in division (I)(2)(c) of this section when the total

proceeds of the combination of violations, payments made in

the combination of violations, amount of the claims for

payment or for other benefits that is false or deceptive and that

is involved in the combination of violations, or value of the

contraband or other property illegally possessed, sold, or

purchased in the combination of violations *exceeds one*

*thousand dollars[.]"*(Emphasis added).

**{¶63}** It appears from the record that Appellant was provided the

following jury instruction for engaging in a pattern of corrupt activity:

"Before you can find the Defendant guilty, you must find

beyond a reasonable doubt the defendant, from on or about July

28, 2014 to on or about September 4, 2014, and in Meigs

County, Ohio, while employed by or associated with an

enterprise knowingly conducted or participated in directly or

indirectly the affairs of the enterprise through a pattern of

corrupt activity or the conviction of [sic], for the collection of

an unlawful debt and at atleast [sic] one of the violations is a

felony of the first, second or third degree."

The trial court then went on to provide definitions of the following terms:

"knowlingly," "enterprise," "conduct," "participate," "pattern of corrupt

activity," and "corrupt activity." The court defined "corrupt activity," which

is the definition at issue here, as follows:

"Corrupt activity means engaging in, attempting to engage in,

conspiring to engage in or soliciting, coercing and intimidating

another person to engage in one (1) or more of certain criminal offenses, namely the alleged instants [sic] of alleged corrupt activity includes any offense of trafficking in heroin or a felony one (1), two (2) or three (3) or four (4) possession of heroin."

Thus, the trial court's overall instruction and specific definition of corrupt activity provided to the jury did not include language regarding the monetary threshold of one thousand dollars that must be proven.

{¶64} The record reveals that Appellant did not object to the court's jury instructions provided on the offenses of engaging in a pattern of corrupt activity. Thus, we can recognize the error only if it constitutes plain error. "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Dickess*, 174 Ohio App.3d 658, 2008–Ohio–39, 884 N.E.2d 92, ¶ 31 (4th Dist.); citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001) and *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002–Ohio–68, 759 N.E.2d 1240. "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.*; citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d

710 (1990) and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus (1978). "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

**{¶65}** "When we review a trial court's jury instructions, we may not judge 'a single instruction to a jury * * * in artificial isolation,' but we must view it 'in the context of the overall charge.' " *State v. Stephenson*, 4th Dist. Adams No. 12CA936, 2013–Ohio–771, ¶ 2; quoting *State v. Madrigal*, 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (2000). "Thus, we must consider the jury instructions 'as a whole' and then determine whether the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights." *Id.* As explained further by the Supreme Court of Ohio:

> "In determining the question of prejudicial error in instructions
> to the jury, the charge must be taken as a whole, and the portion
> that is claimed to be erroneous or incomplete must be
> considered in its relation to, and as it affects and is affected by
> the other parts of the charge. If from the entire charge it appears
> that a correct statement of the law was given in such a manner
> that the jury could not have been misled, no prejudicial error

results." *State v. Hardy*, 28 Ohio St.2d 89, 92, 276 N.E.2d 247

(1971).

"A defective jury instruction does not rise to the level of plain error unless

the defendant shows that the outcome of the trial clearly would have been

different but for the alleged erroneous instruction." *Dickess* at ¶ 32; citing

*State v. Campbell*, 69 Ohio St.3d 38, 41, 630 N.E.2d 339 (1994) and

*Cleveland v. Buckley*, 67 Ohio App.3d 799, 805, 588 N.E.2d 912 (8th

Dist.1990).

{¶66}  The Ohio Official Jury Instructions covering Ohio's RICO

statutes contain two versions of jury instructions for engaging in a pattern of

corrupt activity, one civil and one criminal.  The instruction provided to

Appellant herein was consistent with the criminal instruction provided in 2

OJI –CR 523.32(A)(1) overall.  However, the criminal jury instruction for

this offense does reference the civil instruction for the offense, 1 OJI-CV

445.05, which includes a comment stating as follows:

> "R.C. 2923.31(I).   When incidents of corrupt activity under
>
> R.C. 2923.31(E)(2)(b) and/or (c) are alleged, the financial
>
> limitations set forth in those sections should be read or
>
> summarized as well."

Clearly, there was no instruction provided to the jury here regarding the "financial limitations" or one thousand dollar threshold monetary requirement. Thus, in this case, the trial court's instruction did contain an error, or omission, in its definition of corrupt activity.

{¶67} The Ninth District Court of Appeals considered the exact argument raised by Appellant herein, in *State v. Wilson*, 113 Ohio App.3d 737, 682 N.E.2d 5 (9th Dist.1996), holding that the failure to instruct the jury on the monetary requirement constituted error. *Wilson* at 744. However, because the court concluded the jury could not have found, based upon the evidence before it, that the monetary requirement had not been met, had it been properly instructed on the monetary requirement, the court reasoned that the outcome of the trial court would not have been different but for the error, and therefore declined to find plain error. *Id.*; *see also State v. Nelson*, 9th Dist. Summit No. 17525, 1996 WL 539201. Thus, in order to determine whether the trial court's error here resulted in plain error, we must undertake a sufficiency analysis.

{¶68} A review of the record reveals that Appellant was convicted of two counts of engaging in a pattern of corrupt activity. The first count was identified as count number five in criminal case no. 14CR173 and specified that the offense occurred between the dates of July 28, 2014, and September

4, 2014. The "More Particular Bill of Particulars" filed by the State regarding this count alleged Appellant recruited heroin users and other individuals to become his "runners" to sell heroin on his behalf. It alleged that members of the enterprise included Appellant, Chad Diddle, Amber Duffy, Jeremy Burgess and Theodore Brown. The bill referenced sales by Diddle on behalf of Daboni on July 28, 2014, and August 16, 2014, where Diddle sold .22 grams and 1.99 grams of heroin, respectively. The bill further referenced a search of Daboni's residence that occurred on September 4, 2014, which resulted in the seizure of 11.04 grams of heroin in individually wrapped baggies in one location downstairs, another 9.86 grams of heroin in individually wrapped baggies in another location downstairs, and an additional 24.94 grams of heroin in a location upstairs, that had not been packaged for sale.

{¶69} The bill further stated "[t]he incidents forming the pattern of corrupt activity are the other charges in this indictment: counts one through four." Count one charged Appellant with fifth-degree trafficking in heroin on July 28, 2014, as a result of a controlled buy with Chad Diddle involving .22 grams of heroin. Count two charged Appellant with fifth-degree trafficking in heroin on August 16, 2014, as a result of a controlled buy with Chad Diddle involving 1.99 grams of heroin. Count three charged Appellant

with first-degree trafficking in heroin on September 4, 2014, as a result of

search of Appellant's residence which yielded a total of 45.84 grams of

heroin (found in the locations and quantities detailed above). Count four

charged Appellant with first-degree possession of heroin on September 4,

2014, and referenced the same heroin found that was the subject of count

three, totaling 45.84 grams.

{¶70} As noted by the State on appeal, testimony at trial

demonstrated that the value of the heroin purchased in the July 28, 2014,

controlled buy was approximately $80.00 and the value of the heroin

purchased in the August 16, 2014, controlled buy was approximately

$600.00. While no testimony was specifically provided regarding the value

of the 45.84 grams of heroin located during the search of the residence on

September 4, 2014, there was testimony in the record that the value of heroin

per gram in Meigs County in 2014 was $240.00 per gram when sold by the

gram and $400.00 when sold by one-tenth grams quantities. More

specifically, William Stewart, a member of the Major Crimes Task Force for

Gallia and Meigs counties, testified that the value of a tenth gram of heroin

was $40.00, a half gram was $120.00, and a gram was $240.00.

Additionally, Chad Diddle testified that he sold heroin for Appellant from

July to September 2014, and that he typically sold fifteen to sixteen grams of

heroin per day during that time in one-tenth gram increments for $40.00, half gram increments for $120.00 and one gram increments for $220.00. Employing simple math and applying it to the testimony, the jury could not have concluded that the State failed to prove the monetary threshold amount of $1,000.00 required by the statute. Thus, we cannot conclude that the trial court's failure to instruct the jury on the required monetary threshold resulted in plain error as to the first count of engaging in a pattern of corrupt activity.

{¶71} The second count was identified as count one, in a single count indictment, in case no. 15CR023, and specified that the events occurred between the dates of April 3, 2014, and May 23, 2014. The "More Particular Bill of Particulars" filed by the State made the same general allegations as the other count of engaging in a pattern of corrupt activity, which referenced the activities of Appellant, Chad Diddle, Amber Duffy, Jeremy Burgess and Theodore Brown. The bill specifically referenced sales by Duffy on behalf of Appellant on April 8, 2014, May 1, 2014, and May 23, 2014, where Duffy sold .46 grams, 1 gram, and .93 grams of heroin, respectively. It also referenced a sale by Theodore Brown on April 3, 2014, which was dismissed prior to trial and not argued as a predicate offense for this offense at trial. The bill further stated "[t]he incidents forming the

pattern of corrupt activity are the other charges in this indictment: counts one through four." However, this particular indictment did not include any other charges.

{¶72} Applying the testimony regarding the value of the heroin at that time in Meigs County, Ohio, the value of the controlled buys involving Amber Duffy on behalf of Appellant amounts to approximately $600.00, which falls short of the $1,000.00 monetary threshold set forth in the statute. However, Duffy testified at trial that during the months of April and May of 2014, timeframes set forth in the indictment, she sold heroin for Appellant daily. She testified that she usually sold twenty grams of heroin every two days, or three days maximum. She said every two to three days she would accumulate $4,800.00 from the heroin sales which she would give to Appellant in exchange for more heroin to sell, as well as heroin for her own personal use. In light of the foregoing, the jury could not have concluded that the State failed to prove the monetary threshold amount of $1,000.00 required by the statute. Thus, we cannot conclude that the trial court's failure to instruct the jury on the required monetary threshold resulted in plain error as to the second count of engaging in a pattern of corrupt activity.

{¶73} Further, in light of the above testimony and legal analysis, we conclude both of Appellant's convictions were supported by sufficient

evidence. As such, we cannot conclude that the trial court erred in denying Appellant's Crim.R. 29(A) motion for acquittal. Accordingly, having no merit in either of the arguments raised under Appellant's second assignment of error, it is overruled.

### ASSIGNMENT OF ERROR III

{¶74} In his third assignment of error raised by appellate counsel, Appellant contends his right to a fair trial and due process was violated. He raises four arguments under this assignment of error claiming as follows: 1) the trial court erred when it failed to declare a mistrial when Appellant's presumption of innocence was eroded when multiple jurors saw him in his orange jail jumpsuit; 2) the trial court erred when it failed to declare a mistrial when the prosecutor elicited improper testimony in direct contravention to the trial court's ruling regarding Appellant's motion in limine to limit testimony regarding his ownership of cattle; 3) the trial court erred when it failed to declare a mistrial when testimony revealed that there were likely photographs related to the controlled buys that were not turned over during discovery; and 4) the errors in the trial resulted in cumulative error. The State contends the trial court did not err or abuse its discretion in denying Appellant's various motions for mistrial, and argues that the errors alleged did not amount to cumulative error.

Standard of Review

**{¶75}** "Our analysis begins with the well-settled premise that the decision whether to grant a mistrial rests within a trial court's sound discretion, and its decision will not be reversed absent an abuse of that discretion." *State v. Daniels*, 4th Dist. Scioto No. 11CA3423, 2011–Ohio–5603, ¶ 10; *see also State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015–Ohio-3703, ¶ 38. " 'A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.' " *State v. Keenan*, 143 Ohio St.3d 397, 2015–Ohio–2484, 38 N.E.3d 870, ¶ 7; quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34. In general a mistrial should not be granted based on an error or irregularity unless an accused's substantial rights are adversely affected. *Daniels* at ¶ 11; *see also State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010–Ohio–4775, ¶ 25.

Legal Analysis

**{¶76}** Appellant contends that the trial court erred and abused its discretion in denying three different motions for mistrial based upon three different grounds. Appellant further contends cumulative error from the denial of these three motions occurred as a result. As such, we will examine each alleged error or abuse of discretion separately.

Appearance Before Jurors in Jail Attire

{¶77} Appellant contends the trial court erred in denying his motion for a mistrial that was made because of an incident that occurred on the morning of the second day of trial in which three or four of the jurors saw Appellant wearing his orange jail jumpsuit. A defendant cannot be compelled to stand trial while dressed in prison attire. *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691 (1976). As the Court observed in *Estelle*, however,

> "[T]he courts have refused to embrace a mechanical rule
> vitiating any conviction, regardless of the circumstances, where
> the accused appeared before the jury in prison garb. Instead,
> they have recognized that the particular evil proscribed is
> *compelling* a defendant, against his will, to be tried in jail
> attire." (Emphasis added.) *Id.* at 507.

Similarly, a defendant may not be tried in visible physical restraints in the absence of a particularized need such as "physical security, escape prevention, or courtroom decorum." *Deck v. Missouri*, 544 U.S. 622, 628, 125 S.Ct. 2007 (2005). Thus, cases analyzing prejudice caused by jurors viewing a defendant in physical restraints are analogous to cases involving jurors viewing a defendant in prison attire. When a jury's view of the

defendant in restraints is "brief, inadvertent, and outside the courtroom," there is but a slight risk of prejudice. *State v. Kidder*, 32 Ohio St.3d 279, 286, 513 N.E.2d 311 (1987).

{¶78} Here, the record indicates a motion was filed prior to trial requesting Appellant be permitted to wear regular clothing for trial. That motion was granted. However, on the morning of the second day of trial three or four jurors saw Appellant wearing his orange jail jumpsuit while being transported through the courthouse in his wheelchair into the law library to change into different clothes. The record indicates the trial was taking place in a very small courthouse and that the jury room was located right beside the law library. The record further indicates the incident was brief, accidental, and occurred outside of the courtroom and prior to the start of trial that day. Further, there is no evidence in the record to indicate the jurors that saw Appellant informed the rest of the jury of the incident. Thus, it does not appear that the full jury was aware Appellant was actually in custody during trial.

{¶79} Applying the foregoing legal reasoning to the facts before us, we cannot conclude that the trial court's decision denying Appellant's motion on this ground was unreasonable, arbitrary, or unconscionable. *See State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 9 ("Even assuming

that Defendant's handcuffs were visible during the break in proceedings and that jurors were in the immediate area, the brief and inadvertent encounter outside the courtroom caused minimal risk of prejudice to Defendant."); *State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 37 (finding no abuse of discretion in the trial court's denial of a motion for mistrial where two jurors' view of the defendant in handcuffs was extremely brief, inadvertent, and outside the courtroom); *State v. Kidder*, 32 Ohio St.3d 279513 N.E.2d 311 (1987) ("Although we recognize that no one should be tried while shackled, absent unusual circumstances * * * we agree with the view taken by several federal circuit courts that the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside of the courtroom.") (internal citations omitted).

Missing Photographs/Discovery Violation

{¶80}  Appellant also contends the trial court erred in denying his motion for a mistrial that was made after it became apparent during trial that there may have been some photographs related to the controlled buys that formed the basis of the multiple trafficking in heroin counts.  Appellant argues that Task Force Director William Gilkey, Detective Justin Rice, and Detective William Stewart all testified that it is standard procedure when executing controlled drug buys to photograph the money used and the

contraband purchased.  Appellant further notes that Director Gilkey testified that photos were taken for each of the controlled buys and that everything in the file was turned over to the prosecutor.  The record bears out this testimony.  However, the only photos provided by the State as part of discovery related to a single controlled buy involving Amber Duffy on April 8, 2014.  Thus, Appellant moved for a mistrial based upon the grounds that all discoverable information was not disclosed to the defense as required.  Appellant argues that despite the State's argument it turned over all of the photos it had, it was subject to a standard of due diligence under Crim.R. 16(A).

{¶81}  The State concedes the testimony, but states that "either the photographs were not provided to the prosecution, or the prosecution did not provided [sic] those photographs to Appellant for some unknown reason."  However, the State notes that it did not attempt to introduce those photographs into evidence at trial.  The State further argues that photographs related to evidence of controlled buys would not have been material to the preparation of a defense, but would rather serve to implicate Appellant.  Nonetheless, the State concedes that "if such photographs existed," they should have been provided to Appellant.  There is no evidence in the record

before us that the missing photos were ever actually located after they were discovered to be missing.

{¶82} As set forth by the State, Crim.R. 16 governs discovery and provides in section (A) as follows;

"This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures."

Under Crim.R. 16(L)(1), "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." A trial court has broad discretion in determining a sanction

for a discovery violation, and a trial court's decision will not be reversed absent an abuse of that discretion. *See State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008–Ohio–6200, 898 N.E.2d 952, ¶ 27. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34.

{¶83} In *Darmond*, the Supreme Court of Ohio set forth three factors that govern a trial court's exercise of discretion in imposing a sanction for a discovery violation by the State. *Id.* at ¶ 35. Per *Darmond*, these factors include 1) whether the failure to disclose was a willful violation of Crim.R. 16; 2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense; and 3) whether the accused was prejudiced.

{¶84} Here, there is no evidence in the record that this discovery violation was willful on the part of the State. In fact, when it was discovered there were missing photos, it seemed just as much a surprise to the State as it was to the defense. Although the State did have a duty of due diligence and arguably should have realized there were photos taken that were not provided to them, there is no evidence the violation was willful. Further, the value of the missing photos in terms of the preparation of the defense is

doubtful, and as argued by the State, likely would have further implicated Appellant rather than exculpated him. Finally, we cannot say that Appellant was prejudiced by the violation. Upon realizing there were photos taken that were not provided to the defense and that were unable to be located by the State, the trial court offered to give a curative instruction to the jury regarding the photos. However, defense counsel declined based upon a theory that do so would serve to explain or justify the State's conduct, which might be more damaging.[5]

{¶85} Based upon our consideration of the foregoing factors as applied to the facts presently before us, we cannot conclude that the trial court's handling of the discovery violation was unreasonable, arbitrary, or unconscionable. Thus, we cannot conclude that the trial court abused its discretion in denying the motion for mistrial based upon this ground. *See State v. Wilson*, 6th Dist. Lucas No. L-02-1178, 2003-Ohio-2786, ¶ 10 (reasoning that although the State's failure to provide photographs before trial constituted a discovery violation, because the defendant was not

---

[5] The record reveals that the first time the State tried to introduce photos into evidence (photos that had been provided to the defense), the introduction was confusing as the witness on the stand at that time was not the person involved in that particular controlled buy and thus could not identify the subject matter of the photos. Because the attempted introduction was less than artful, the defense argued any curative instruction on the issue of the missing photos might serve to suggest the State had not erred in their attempt to introduce the photos through the wrong witness, rather than to explain the fact that the State had not provided other photos which it had a duty to provide.

prejudiced by the admission of the photographs, there was no abuse of discretion by the trial court).

Mention of Ownership of Cattle

{¶86}  Appellant also contends the trial court erred in denying his motion for a mistrial that was made after the prosecution elicited testimony from one its witnesses indicating Appellant owned cattle, despite a previous motion in limine being filed on that very subject and an alleged understanding by the parties that the order had been granted.  The State does not dispute that it was agreed there was to be no mention of Appellant's ownership of cattle, however, it argues that the brief question and answer was not intentional, and that Appellant was not prejudiced or denied a fair trial by this brief reference to the ownership of cattle.  As such, the State argues that the prosecutor's conduct did not rise to the level of prosecutorial misconduct.

{¶87}  "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 36; citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45.  "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' " *Id*.;

quoting *State v. Givens*, 4th Dist. Washington No. 07CA19, 2008-Ohio-1202, ¶ 28, in turn quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).  "Prosecutorial misconduct constitutes reversible error only in rare instances." *State v. Edgington*, 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18; citing *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993).  "The 'touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an "error free, perfect trial." ' " *Leonard* at ¶ 36; quoting *Gest* at 257.

{¶88}  A review of the trial transcript reveals that the prosecutor did in fact ask a question of its witness that was likely to elicit a response indicating Appellant owned cattle.  Thus, we conclude the prosecutor's actions constituted error.  However, because we cannot conclude that the error materially prejudiced Appellant, we cannot conclude that the prosecutor's actions rose to the level of prosecutorial misconduct that deprived Appellant of a fair trial.

{¶89}  The record reveals that the prosecutor asked a prohibited question one time to one witness.  Thus, this was an isolated incident. Further, despite the fact that all parties agreed there would be no mention of Appellant's ownership of cattle, we find any connection between ownership

of cattle and the idea that such ownership must mean an individual is wealthy to be tenuous at best in the current time in which we live. Further, we are aware of no link between ownership of cattle and the commission of drug offenses. As such, acknowledging the technical error, we find no material prejudice to Appellant that deprived him of a fair trial. As such, having found the prosecutor's actions did not rise to the level of prosecutorial misconduct, we cannot conclude the trial court erred in granting a mistrial on this ground.

Cumulative Error

{¶90} Finally, Appellant argues cumulative error based upon the three grounds previously discussed under this assignment of error. Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of [the] numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 57; citing *State v. Goff*, 82 Ohio St.3d 123, 140, 694 N.E.2d 916.

{¶91} Appellant alleges three underlying errors under this assignment of error in support of his cumulative error argument. The alleged errors include jurors seeing him in jail attire, a discovery violation, and the mention of cattle in violation of an order prohibiting such. While we noted Appellant was certainly entitled not to be compelled to stand trial before a jury while wearing jail attire, a brief view by three or four jurors that was accidental and occurred outside the courtroom did not deprive him of a fair trial. Further, while we agreed that the State's failure to provide the missing photos was a technical discovery violation, we could not conclude the violation necessitated the granting of a mistrial where the State's action was not willful and the missing photos did not impair preparation of a defense. Finally, although we found the prosecutor's elicitation from its witness a statement indicating Appellant owned cattle, we found the prosecutor's actions did not rise to the level of prosecutorial misconduct which deprived Appellant of a fair trial or should have resulted in a mistrial.

{¶92} Thus, despite finding three technical errors, none of the errors were egregious and only one appears to have been intentional. Three such errors in the course of a five-day trial involving ten criminal counts spanning three different cases that were consolidated for trial does not rise to the level of cumulative error. Thus, after reviewing the entirety of the proceedings

below, we do not find Appellant's convictions should be reversed because of cumulative error.

## Conclusion

**{¶93}** Having found that none of the errors identified herein necessitated a mistrial or rose to the level of cumulative error, Appellant's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**{¶94}** In his fourth and final assignment of error raised by appellate counsel, Appellant contends that his maximum, possible sentence on all counts is not clearly and convincingly supported by the record. Appellant argues the trial court erred when it sentenced him to the maximum possible sentence available despite the record before it, which indicated Appellant had no prior felony record, has work history in Columbus and has three small children and a family to support. The State contends that the trial court did not err in imposing maximum sentences on all counts, which it contends were supported by the record, and further argues that the imposition of maximum sentences does not require specific findings.

## Standard of Review

**{¶95}** When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Brewer*, 2014–Ohio–1903,

11 N.E.3d 317, ¶ 33 (4th Dist.) ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion"); *see also State v. Graham*, 4th Dist. Highland No. 13CA11, 2014–Ohio–3149, ¶ 31. R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

Legal Analysis

**{¶96}** Here, Appellant was sentenced to an aggregate prison term of thirty-two years, consisting of maximum and consecutive sentences imposed on all counts, other than the ones that merged for purposes of sentencing, as discussed above. It appears that the sentences Appellant received on all counts were within the statutory range for each offense, thus it cannot be said that the length of either sentence is contrary to law. Further, and importantly, maximum sentences do not require specific findings. *State v. McClain*, 4th Dist. Pickaway No. 13CA17, 2014–Ohio–4192, ¶ 36; *State v.*

*Lister*, 4th Dist. Pickaway No. 13CA15, 2014–Ohio–1405, ¶ 10; citing *State v. White*, 2013–Ohio–4225, 997 N.E.2d 629, ¶ 7 (1st Dist.).  Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12. *Lister, supra,* at ¶ 14.  H.B. 86 amended R.C. 2929.11 and states:

> "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

{¶97}  R.C. 2929.12 also provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense

and the likelihood that the offender will commit future offenses. *Lister, supra,* at ¶ 15. Appellant argues the above factors, including no prior felony record, work history in Columbus and having three small children, should have mitigated in his favor in terms of the length of sentence imposed. Appellant also argues that he did not cause or expect to cause harm to any person or property.

{¶98} While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)' " *State v. Latimer*, 11th Dist. Portage No. 2011–P–0089, 2012–Ohio–3745, ¶ 18; quoting *State v. Webb*, 11th Dist. Lake No. 2003–L–078, 2004–Ohio–4198, ¶ 10; quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). The Supreme Court of Ohio in *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), has held: "[a] silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *Latimer*, supra; quoting *Adams* at paragraph three of the syllabus. Further, "[a] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of

sentencing as well as the statutory seriousness and recidivism factors." *State v. Talley*, 74 N.E.3d 868, 2016–Ohio–8010, ¶ 15 (2nd Dist.).

{¶99} A review of the record reveals that although the trial court did not specifically state its reasons for imposing maximum sentences on all counts, it expressly stated its consideration of the required principles and purposes of felony sentences. For instance, in addition to enumerating the applicable sentencing statutes and factors, the trial court stated that it had considered the testimony given over the five-day trial, and that it "is ever mindful of *State v. Foster* and House Bill eighty-six and that the Court must formulate its decision based upon overriding principles and purposes of felony sentencing * * *."

{¶100} Based on the foregoing, it is clear that the trial court appropriately considered the principles and purposes of felony sentences, as set forth in R.C. 2929.11, including the seriousness and recidivism factors contained in R.C. 2929.12, as well as the record before it, which included multiple counts of trafficking in heroin, possession of heroin, and two counts of engaging in a pattern of corrupt activity related to the trafficking in heroin. Thus, we cannot conclude the trial court's imposition of maximum sentences on all counts was not supported by the record or was clearly and convincingly contrary to law.

{¶101} Although Appellant does not specifically challenge the trial court's imposition of consecutive sentences, because Appellant argues the trial court erred in imposing the maximum possible sentence on all counts, which necessarily required the sentences be imposed consecutively, we will review the trial court's imposition of consecutive sentences as well. "[I]n order to impose consecutive terms of imprisonment, a trial court is required to make findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, ¶ 29. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *State v. Bever*, 4th Dist. Washington No. 13CA21, 2014-Ohio-600, ¶ 17; *State v. Stamper*, 12th Dist. Butler No. CA2012–08–166, 2013–Ohio–5669, ¶ 23. Specifically, the sentencing court must find that: (1) "the consecutive sentence is necessary to protect the public from future crime or to punish the offender"; (2) "the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one of the following:

"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing,

was under a sanction imposed pursuant to section 2929.16,
2929.17, or 2929.18 of the Revised Code, or was under post-
release control for a prior offense.

(b) At least two of the multiple offenses were committed as part
of one or more courses of conduct, and the harm caused by two
or more of the multiple offenses so committed was so great or
unusual that no single prison term for any of the offenses
committed as part of any of the courses of conduct adequately
reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that
consecutive sentences are necessary to protect the public from
future crime by the offender."

{¶102}  A review of the record before us reveals that the trial court
made the required findings before imposing consecutive sentences, and the
finding made are supported by the record.  For example, the trial court
expressly found, pursuant to R.C. 2929.14(C), that consecutive sentences
were necessary 1) to protect the public from future crime; 2) to punish the
offender; 3) not disproportionate to the conduct or danger posed by the
offender; and also found that two or more of the offenses were part of a
course of conduct, the harm of which was so great or unusual that a single

prison term would not accurately reflect the seriousness of the conduct. As set forth above, Appellant was convicted of multiple counts of trafficking in heroin, one count of possession of heroin, and two counts of engaging in a pattern of corrupt activity, the basis of which stemmed from trafficking in heroin. Despite Appellant's suggestion that he did not cause, or did not intend to cause, harm to a person or property, there is a victim in drug trafficking cases, and that victim is society itself. Thus, we reject Appellant's argument that the record fails to indicate harm caused. For the foregoing reasons, we find the trial court's imposition of consecutive sentences pursuant to R.C. 2929.14 is supported by the record and was not clearly and convincingly contrary to law.

{¶103} We further briefly address Appellant's argument that the State's urging the trial court to "send a message" at the sentencing stage was improper. A review of the record indicates that the State urged the court as follows during the sentencing hearing:

"Based upon the different instances, each of the controlled buys, that warrants consecutive findings as well as the amount of Heroin found, the harm to Meigs County and society, and the fact that he was a major supplier to Meigs County over that timeframe, we would ask that his Court set [sic] a message that

that's not the kind of business the citizens of Meigs County

want in its town or community, and we would ask that the max

be imposed on each one. And the total that comes to, would be

sixteen (16) years mandatory prison term, and additional eleven

(11) years non-mandatory prison term, and sixty (60) months of

top of that for a total of thirty-two (32) years. Thank you."

In response, Appellant's counsel stated he was "troubled" at the State's

request to "send a message" and argued "that's not how our justice system

works."

{¶104} On appeal, the State responds to this argument by pointing

out that under R.C. 2929.11 the overriding principles and purposes of felony

sentencing include consideration of the need to protect the public from

future crime, not only by the defendant but from others as well. The State

further responds by arguing that the need to deter "others" from future crime

is one of the specific factors to be considered. We agree with the State.

{¶105} This Court has previously acknowledged that a "send a

message" argument is improper when made to a jury prior to a finding of

guilt. *State v. Dyer*, 4th Dist. Scioto No. 07CA3163, 2008-Ohio-2711, ¶ 47;

citing *State v. Grimes*, 2nd Dist. Hamilton No. C-030922, 2005-Ohio-203, ¶

19 ("In a criminal prosecution, the state is not permitted to ask the jury to

find the defendant guilty in response to public demand, commonly known as the 'send a message' argument.")  However, we believe there is a distinction between urging the jury to send a message by finding a defendant guilty and urging the court to send a message at the sentencing stage, after a defendant has already been found guilty.  As such, and light of the foregoing discussion regarding the principles and purposes of felony sentencing, we reject this portion of Appellant's argument.

{¶106}  Thus, having found no error in the trial court's imposition of maximum and consecutive sentences, which resulted in the maximum, possible sentence on all counts, we overrule Appellant's fourth and final assignment of error.  As set forth above, however, our resolution of this assignment of error is qualified by our disposition of Appellant's first assignment error, which reversed the imposition of the eight-year prison term imposed for the sole count of possession of heroin.  Thus, after remand, the total length of Appellant's combined sentences will be reduced from thirty-two years to twenty-four years.  Accordingly, this matter is affirmed in part, reversed in part, and remanded with instructions.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Court costs shall be divided equally between the parties.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:      Concurs in Judgment and Opinion.
Hoover, P.J.: Concurs in Judgment Only.

For the Court,

BY:   _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL:  Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**